**Edward W. DALHEIM, et al., Plaintiffs–Appellees,**

v.

**KDFW–TV, Defendant–Appellant.**

**No. 89–1544.**

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1990.

---

David M. Ellis, Michael P. Maslanka, William L. Keller, Clark, West, Keller, Butler & Ellis, Dallas, Tex., for defendant-appellant.

Yona Rozen, Gillespie and Rozen, Dallas, Tex., for plaintiffs-appellees.

Betty Southard Murphy, David A. Grant, Baker & Hostetler, Washington, D.C., for amicus—National Ass'n of Broadcasters, et al.

Stanley M. Berman, Cohen, Weiss & Simon, New York City, for amicus curiae—American Federation of Television & Radio Artists.

David S. Barr, Barr, Peer & Cohen, Washington, D.C., for amicus curiae—The Newspaper Guild.

Before RUBIN, GARWOOD and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A television station appeals a judgment of the district court holding it liable for violations of the Fair Labor Standards Act (FLSA)[1] by failing to compensate its general-assignment reporters, news producers, directors, and assignment editors for overtime work. Because we find that the district court properly applied the applicable statute and regulations, and because we find that the record supports the district court's conclusion that the employees involved in this case are not exempt under § 13(a)(1) of the FLSA as bona fide executive, administrative, or professional employees, we affirm.

## I

### A. *Facts and Procedural History*

The district court's extensive findings of fact are set out in the first of its published opinions in this case.[2] We therefore merely summarize them.

Plaintiffs are nineteen present and former general-assignment reporters, producers, directors, and assignment editors employed in the news and programming departments of television station KDFW–TV (KDFW). As its call letters imply, KDFW serves the Dallas–Fort Worth area which, with approximately 3.5 million viewers, is the eighth largest television market in the nation. The news and programming departments are responsible for producing KDFW's local news broadcasts and its public affairs programming.

KDFW's general-assignment reporters usually receive a new coverage assignment each day. The assignment manager or an assignment editor tells the reporter the story to be covered, what she is expected to "shoot," and the intended angle or focus of the story. After the reporter interviews the persons that she or another KDFW employee has arranged to interview, she obtains pertinent video footage, and then writes and records the text of the story, subject to review by the producer. Some reporters help assemble the video and text narration; others rely on a video editor to put the final package together. General-assignment reporters are only infrequently assigned to do a series of reports focusing on a single topic or related topics. Successful reporters usually have a pleasant physical appearance and a strong and appealing voice, and are able to present themselves as credible and knowledgeable.

Producers are responsible for determining the content of the ten-to-twelve minute news portion of KDFW's thirty-minute newscast. They participate in meetings to decide which stories and story angles will be covered; they also decide the amount of time to be given a particular story, the sequence in which stories will be aired, and when to take commercial breaks. Producers have the authority to revise reporters'

---

1. 29 U.S.C. §§ 201–219 (1988).

2. *Dalheim v. KDFW–TV,* 706 F.Supp. 493 (N.D. Tex.1988) (*Dalheim I*). The trial was bifurcated into liability and damages phases. The district court's opinion with respect to the latter is pub-lished at *Dalheim v. KDFW–TV,* 712 F.Supp. 533 (N.D.Tex.1989). Neither party has appealed the district court's order on issues relating to damages.

stories. All of the producers' actions are subject to approval by the executive producer.

Directors review the script for the newscast in order to prepare technical instructions for "calling" the show. The director decides which camera to use and on which machine to run videotaped segments or preproduction graphics. During the broadcast, the director cues the various technical personnel, telling them precisely when to perform their assigned tasks. The overall appearance of KDFW's newscasts, however, is prescribed by station management. The director therefore has no discretion concerning lighting, camera-shot blocking, closing-shot style, or the sequence of opening and closing graphics. KDFW's directors also direct some public affairs programming, which have no prescribed format but involve only simple camera work and a basic set. In addition, KDFW's directors screen commercials to be aired by the station to ensure that they meet the standards set by KDFW's parent, Times Mirror Corporation.

Assignment editors are primarily responsible for pairing reporters with both photographers and videotape editors. They also monitor the wire services, police and fire department scanners, newspapers, and press releases for story ideas that conform to KDFW's general guidelines. Assignment editors have no authority to decide the stories to be covered, but they may reassign reporters if they learn of a story requiring immediate action. Assignment editors operate under the supervision of the assignment manager.

Plaintiffs brought this suit in May, 1985, alleging that KDFW's reporters, producers, directors, and assignment editors were required to work more than forty hours per week without overtime pay, in willful violation of § 7 of the FLSA,[3] and seeking to recover back wages from May, 1982 to the present. After an eight-day bench trial, the district court concluded that none of the plaintiffs was exempt from § 7 as a bona fide executive, administrative, or professional employee under § 13(a)(1)[4] and that KDFW had violated the FLSA by failing to pay overtime.[5] The court further concluded, however, that KDFW's violation was not willful, and that KDFW therefore was not liable for damages outside the FLSA's two-year statute of limitations for nonwillful violations.[6]

## B. The FLSA and the § 13(a)(1) Exemptions

■ Section 7 of the FLSA requires employers to pay overtime to employees who work more than forty hours per week. Section 13(a)(1) exempts from the maximum hour provision employees occupying "bona fide executive, administrative, or professional" positions. That same section empowers the Secretary of Labor to define by regulation the terms "executive," "administrative," and "professional." She has done so at 29 C.F.R. § 541.0 et seq., setting out "long" tests for employees earning more than $155 per week but less than $250 per week, which include specific criteria, and "short" tests, described in less detail, for employees earning more than $250 per week. In addition, the Secretary has issued interpretations of those regulations, which are codified at 29 C.F.R. § 541.100 et seq. The § 13(a)(1) exemptions are "construed narrowly against the employer seeking to assert them,"[7] and the employer bears the burden of proving that employees are exempt.[8]

The short test for the executive exemption requires that an employee's "primary duty" consist of the "management of the enterprise" in which she is employed "or a customarily recognized subdivision thereof." In addition, the executive employee's work must include "the customary and reg-

3. 29 U.S.C. § 207 (1988).

4. Id. § 213(a)(1).

5. *Dalheim I*, 706 F.Supp. at 495.

6. Id. at 510–511.

7. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960).

8. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694 (1966).

ular direction of the work" of two or more employees.[9] The regulations define an exempt administrative employee as one whose "primary duty" consists of "office or nonmanual work directly related to management policies or general business operations" that "includes work requiring the exercise of discretion and independent judgment."[10] The exemption for creative professionals requires that the employee's "primary duty" consist of work that is "original and creative in character in a recognized field of artistic endeavor," the result of which depends "primarily on the invention, imagination, or talent of the employee."[11]

KDFW challenges the holding of the district court on four distinct grounds, claiming that the district court (1) erroneously construed the term "primary duty" to mean duties occupying more than half of an employee's time; (2) erroneously concluded that reporters' work is not "original and creative" as those terms are used in the regulations; (3) misconstrued the requirement that administrative work be "directly related to management policies and general business operations," in that it (a) erroneously applied the concept of "production," as that term is used in the Secretary's interpretations, to the work of white-collar employees like producers, directors, and assignment editors, and (b) erroneously concluded that the work of producers, directors, and assignment editors should not be deemed "directly related" to business operations because they "carr[y] out major assignments in conducting the operations of the business," within the meaning of the interpretations; and (4) erroneously failed to "tack" exemptions for producers, directors, and assignment editors as provided for in the regulations.[12]

## II

KDFW contends that each of the errors it asserts on appeal is a legal error, requiring de novo review by this court. Plaintiffs, on the other hand, assert that KDFW has challenged only the district court's findings of fact and the inferences it drew therefrom, and that this court should therefore reverse only if the district court's findings are clearly erroneous.

The proper standard for appellate review of a district court's determination whether a given person is covered by the FLSA—that is, whether the person is, first, an "employee" as defined in § 3(e) of the Act, and if so, whether that person is "exempt" under § 13—has perplexed the courts and parties alike since the FLSA was passed in 1938. This confusion stems in part from the inherent difficulty of distinguishing among questions of "law," "fact," and "law and fact," and in part from the nature of the inquiry, in which historical facts and factual inferences are often indistinguishable from the legal standards we must apply. Courts of appeals have therefore found it difficult to express precisely which of the lower courts' conclusions they are reviewing under which standard.[13] The result has been a multitude of seemingly inconsistent applications of the various standards of review.[14]

The standards of review governing this case evolved in the closely related context of determining whether a worker is an "employee" covered under § 3(e) of the FLSA. In *Beliz v. W.H. McLeod & Sons Packing Co.,*[15] this court examined the confusion in our prior cases over whether the determination of employee status is properly characterized as a question of law or fact. We held that the ultimate determination of employee status is a question of law, whereas the district court's "subsidi-

9. 29 C.F.R. § 541.1(f).

10. Id. § 541.2(e)(2).

11. Id. § 541.3(a)(2).

12. Id. § 541.600.

13. *See, e.g., Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 713–14, 106 S.Ct. 1527, 1529–30, 89

L.Ed.2d 739 (1986); id. at 715–16, 106 S.Ct. at 1530–31 (Stevens, J., dissenting).

14. *See Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1327 (5th Cir.1985) (citing and contrasting cases).

15. 765 F.2d 1317 (5th Cir.1985).

ary findings are of fact."[16] *Beliz* was reaffirmed in *Brock v. Mr. W Fireworks, Inc.*,[17] which teaches that there are three distinct types of findings involved in determining employee status under § 3(e). First, there are findings of historical fact. These include such findings as whether the putative employer controlled the number of hours the individual worked. These are subject to reversal only if clearly erroneous.[18] Second, there are findings as to the five factors set out by the Supreme Court in *United States v. Silk*.[19] These are based on inferences drawn from historical facts, such as whether a particular job required "skill and initiative" and whether there was a "permanent" employer-employee relationship. These, too, are fact findings, reviewed for clear error.[20] Finally, there is the district court's ultimate conclusion—that is, whether the individual is an "employee" under § 3(e). "The ultimate finding ... is not simply a factual inference drawn from historical facts, but more accurately is a legal conclusion based on factual inferences drawn from historical facts."[21] Such conclusions are subject to de novo review.[22]

■ A district court attempting to determine whether an employee is exempt under § 13(a)(1) must make findings of fact and conclusions of law analogous to those involved in determining employee status. First, the court must make findings of historical fact. In this case, for example, the district court found that a reporter's script for a story is subject to review by the producer. Challenges to these "factual findings relative to work tasks and responsibilities" are governed by the longstanding rule that the " 'determination as to whether an employee is exempt under the [FLSA] is primarily a question of fact which must be reviewed under the clearly erroneous standard.' "[23] Thus, to the extent that KDFW challenges the district court's findings of historical fact, KDFW must demonstrate clear error to prevail.

Second, the court must draw inferences from those facts in applying the regulations and interpretations promulgated under § 13(a)(1). For example, whether an employee's work is "original and creative" in character and whether such work is an employee's "primary duty" are based on inferences from historical facts.[24] Such inferences are also reviewed for clear error.[25]

Finally, the district court must make the ultimate determination of whether an employee is exempt. That conclusion, though based on both historical fact and factual inferences, is properly characterized as a conclusion of law, subject to plenary review.[26]

■ We are mindful of our duty to give the record "a careful and fitting examination" and to "ensure that the factfinding of the district court is performed with the proper legal standards in mind."[27] Even so, the inquiry into exempt status under § 13(a)(1) remains intensely factbound and case specific. In the great majority of cases, the district court's findings of fact and the inferences it draws, if carefully set forth and supported by the record, will all but compel the legal conclusion that a giv-

16. Id. at 1327.

17. 814 F.2d 1042 (5th Cir.), *cert. denied,* 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987).

18. Id. at 1044.

19. 331 U.S. 704, 715, 67 S.Ct. 1463, 1469, 91 L.Ed. 1757 (1947).

20. *Brock,* 814 F.2d at 1044.

21. Id. at 1045.

22. Id.

23. *Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135, 1137 (5th Cir.1988) (quoting *Cobb v. Finest Foods, Inc.,* 755 F.2d 1148, 1150 (5th Cir.1985));

accord, *Icicle Seafoods Inc. v. Worthington,* 475 U.S. 709, 713–14, 106 S.Ct. 1527, 1529–30, 89 L.Ed.2d 739 (1986); *Walling v. General Industries Co.,* 330 U.S. 545, 550, 67 S.Ct. 883, 885, 91 L.Ed. 1088 (1947).

24. *Walling,* 330 U.S. at 550, 67 S.Ct. at 885.

25. See *Brock,* 814 F.2d at 1044; *see also Icicle Seafoods,* 475 U.S. at 713, 106 S.Ct. at 1529.

26. *Icicle Seafoods,* 475 U.S. at 714, 106 S.Ct. at 1530; *Brock,* 814 F.2d at 1044–45.

27. *Brock,* 814 F.2d at 1044.

en employee is or is not exempt. Absent some fundamental legal error, those conclusions will usually stand undisturbed on appeal.[28] We cannot say, therefore, whether the legal conclusions reached by the district court and affirmed by this court in this case have any relevance beyond the news department at KDFW. Each case must be judged on its own peculiar facts.

## III

Each of the three exemptions claimed by KDFW requires the district court to infer from its findings of historical fact what constitutes the employees' "primary duty." KDFW claims that the district court in this case misconstrued the concept of "primary duty" as used in the regulations to mean duties that occupy "a major part, or over fifty percent, of an employee's time."[29] If the district court did indeed misconstrue "primary duty," then its inferences of fact were made with the wrong legal standard in mind, and it erred as a matter of law.[30]

■ We agree with KDFW that an employee's "primary duty" cannot be ascertained by applying a simple "clock" standard that contrasts the amount of time each day an employee spends on exempt and nonexempt work. Section 541.103 of the interpretations defines "primary duty" with respect to all three exemptions. It provides that, while "[i]n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time[,] time alone … is not the sole test."[31] Ex-

empt work may be an employee's primary duty even though such work occupies less than half her time "if the other pertinent factors support such a conclusion."[32] Precisely what those factors are depends upon which exemption is being claimed,[33] but for each the essence of the test is to determine the employee's chief or principal duty.[34] At least under the short tests,[35] the employee's primary duty will usually be what she does that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time.[36]

■ We cannot agree, however, with KDFW's contention that the district court misconstrued the concept of primary duty. The district court did state in its opinion that "[p]rimary duty as defined in the regulations means the major part, or over fifty percent, of the employee's time."[37] This court has made similar statements,[38] but that does not mean that we misapplied the regulation. After examining the district court's opinion and reviewing the record, we are convinced that the district court did not base its decision solely on the amount of time KDFW's employees spend at various tasks. Instead, the district court's opinion evidences a careful assessment of the nature of each of the job classifications that KDFW claims is exempt. In determining the employees' primary duties, the district court did not act as a judicial punch clock. The district court painstakingly catalogued the tasks performed by each type of employee, and related how each task

---

28. *See Icicle Seafoods,* 475 U.S. at 714, 106 S.Ct. at 1530.

29. *Dalheim I,* 706 F.Supp. at 504.

30. *Brock,* 814 F.2d at 1044.

31. 29 C.F.R. § 541.103.

32. Id.

33. *See* id. (enumerating factors for managerial exemption).

34. *See Donovan v. United Video, Inc.,* 725 F.2d 577, 581–82 (10th Cir.1984); *Guthrie v. Lady Jane Collieries, Inc.,* 722 F.2d 1141, 1144–45 (3d Cir.1983); *Paul v. Petroleum Equipment Tools Co.,* 708 F.2d 168, 170–71 (5th Cir.1983); *Dono-*

*van v. Burger King Corp.,* 672 F.2d 221, 225–27 (1st Cir.1982).

35. Unlike the short tests, the long tests specifically limit the amount of time an employee may spend on nonexempt work and still qualify for the exemption. 29 C.F.R. §§ 541.1(e), 541.2(d), 541.3(d).

36. *See Donovan,* 672 F.2d at 226–27; *see also Paul,* 708 F.2d at 171.

37. *Dalheim I,* 706 F.Supp. at 504.

38. *Paul,* 708 F.2d at 170 (" 'Primary duty' means that 'the major part, or over 50 percent, of the employee's time' must be spent performing exempt work.") (quoting 29 C.F.R. § 541.103).

contributes to producing a KDFW newscast. Accordingly, we find no error.

### IV

#### A. *KDFW's General–Assignment Reporters*

■ KDFW argues that its general-assignment reporters are exempt artistic professionals. Under the regulations, KDFW must prove that the reporter's "primary duty" consists of work that is "original and creative in character in a recognized field of artistic endeavor," the result of which depends "primarily on the invention, imagination, or talent of the employee."

The regulations and interpretations at issue here, §§ 541.3(a)(2) and 541.303(e) and (f), have not changed in any material respect since 1949, long before broadcast journalism evolved into its modern form. To apply the Secretary's interpretation literally to the plaintiffs would be to assume that those occupations exist today as they did forty years ago. No one disputes that the technological revolution that has swept this society into the so-called Information Age has rendered that assumption untenable. The question is what role, if any, § 541.303(e) and (f) may have in determining the exempt status of modern broadcast journalists.

KDFW argues that the district court gave the interpretation undue weight, thus blinding itself to the realities of modern broadcast journalism. Rather than focusing on the "essential nature" of reporters' duties, KDFW contends, the district court "pigeonholed" reporters according to standards that are decades out of date. Amicus National Association of Broadcasters (NAB) goes even further, contending that the Secretary's interpretation is based on "erroneous, outmoded assumptions about journalism and journalists," and that "[i]nsofar as the District Court took these 1940 assumptions about print journalists and applied them to the present-day duties of KDFW television reporters, [it] erred as a matter of law."

The interpretations are not binding authority, for they are not statements of law, but are only "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." [39] KDFW and NAB fail to recognize that whether a district court finds § 541.303 persuasive, so long as the court does not hold the interpretation mandatory, is not controlling: if the court's application of the statute and substantive regulations are legally correct and its factfinding is without clear error, there is no basis for reversal on appeal.

The district court committed no such error in this case. We have already noted that the inquiry into an employee's exempt status is fact specific. To the extent that a district court finds in the interpretations an analogy useful in deciding the case before it, it may rely on the interpretations as persuasive evidence of both Congress's legislative and the Secretary's regulatory intent. At the same time, should a district court find the concepts expressed inapposite to the facts before it, the court is free to engage in its own application of § 13(a)(1) and the pertinent regulations. As the Supreme Court has recognized, the persuasive authority of a given interpretation obtains only so long as "all those factors which give it power to persuade" persist.[40]

In reality, KDFW's and NAB's attempt to debunk the analogy between the interpretation's portrayal of broadcasting and journalism as they existed in the 1940s and broadcast journalism as it exists today is a veiled attack on the district court's findings of fact. KDFW makes much of the recognition in § 541.303(e) that a television announcer's "presence"—that "inherent special ability or talent which, while difficult to define, is nevertheless real "—is an important consideration in determining her exempt status. KDFW claims that it is this intangible element, along with the reporter's daily responsibility for melding language and visual images into an inform-

---

**39.** *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

**40.** *Id.*

ative and memorable presentation, that gives reporters' work its essential creative character.

In the abstract, KDFW's argument has some appeal. We need not go outside the record to recognize, as the district court recognized, that television journalism is undoubtedly a medium capable of bearing original and creative expression, and that the medium's very nature as a fusion of discrete and disparate elements marks a fundamental difference between journalism on television and in print.

The Secretary's interpretations make it abundantly clear that § 541.3(a)(2) was intended to distinguish between those persons whose work is creative in nature from those who work in a medium capable of bearing creative expression, but whose duties are nevertheless functional in nature.[41] The factual inquiry in this case was directed precisely at determining on which side of that line KDFW's reporters stand. The district court found that, at KDFW, the emphasis was on "good reporting, in the aggregate," and not on individual reporters with the "presence" to draw an audience.[42] The district court found that the process by which reporters meld sound and pictures relies not upon the reporter's creativity, but upon her skill, diligence, and intelligence.[43] More importantly, the district court found that "[r]eporters are told the story that the station intends they cover, what they are expected to shoot, and the intended angle or focus of the story."[44]

In essence, the district court found that KDFW failed to prove that the work constituting its reporters' primary duty is original or creative in character.[45] The district court recognized, and we think correctly, that general-assignment reporters may be exempt creative professionals, and that KDFW's reporters did, from time to time, do original and creative work.[46] Neverthe-

less, at KDFW, the approach reporters take to their day-to-day work is in large part dictated by management, and the stories they daily produce are neither analytic nor interpretive nor original.[47] In neither form nor substance does a reporter's work "depend[ ] primarily on [her] invention, imagination, or talent." Those inferences, while not compelled by the evidence, are certainly supported by it. Based on those inferences and the underlying historical facts, which we review only for clear error, we think the legal conclusion that reporters are nonexempt follows as a matter of course. We therefore conclude that the district court did not err in holding that KDFW's general-assignment reporters are not exempt professionals.

### B. *KDFW's News Producers*

KDFW argues that its news producers are exempt either as creative professionals, administrators, executives, or a combination thereof. We address each argument in turn.

■ 1. *Producers as Creative Professionals.*—KDFW does not press this argument much, for good reason. The district court found that KDFW failed to prove that the work producers do in rewriting reporters' copy and in formatting the newscast are products of their "invention, imagination, and talent."[48] Rather, producers perform their work within a well-defined framework of management policies and editorial convention. To the extent that they exercise discretion, it is governed more by skill and experience than by originality and creativity.[49] Because the district court's findings are supported by the record, we find no error.

■ 2. *Producers as Administrators.*—The argument KDFW pursues most

---

41. *See Stranger v. Vocafilm Corp.*, 151 F.2d 894, 895–96 (2d Cir.1945).

42. *Dalheim I*, 706 F.Supp. at 505.

43. Id.

44. Id. at 496.

45. Id. at 505.

46. Id. at 503–05.

47. Id.

48. Id. at 506.

49. Id. at 507–08.

vigorously with respect to producers is that they are exempt administrative employees. Section 541.2 of the regulations requires that an exempt administrator perform (1) office or nonmanual work (2) that is directly related to the employer's management policies or general business operations and (3) involves the exercise of discretion and independent judgment. The Secretary's interpretation, § 541.205(a), defines the "directly related" prong by distinguishing between what it calls "the administrative operations of a business" and "production." Administrative operations include such duties as "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control."[50] Work may also be "directly related" if it is of "substantial importance" to the business operations of the enterprise in that it involves "major assignments in conducting the operations of the business, or ... affects business operations to a substantial degree."[51] KDFW argues that the district court erred in finding that producers' work failed the "directly related" requirement because it is neither related to the administrative operations of KDFW, nor is it of "substantial importance" to the enterprise.[52] Whether an employee's work is or should be deemed "directly related" to business operations is an inference drawn from the historical facts; we review such inferences for clear error.

KDFW first asserts that the district court erroneously applied the distinction between "administrative work" and "production" drawn in § 541.205(a) to the work of producers. The concept of "production," claims KDFW, applies only to "blue collar manufacturing employees." White collar employees such as producers cannot be involved in production; therefore, their work is directly related to general business operations.

That argument makes little sense. Section 541.205(a) is not concerned with distinguishing between white collar and blue collar employees, or between service industries and manufacturing industries. The distinction § 541.205(a) draws is between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market.[53] This is evident from the examples of administrative tasks enumerated in § 541.205(b), even though the employees performing such tasks are, as the interpretation recognizes, commonly labelled "white collar employees." KDFW draws its understanding of the white collar/blue collar distinction not from § 541.205, but from § 541.203, which is concerned with the very different problem of distinguishing manual and nonmanual work. The distinction drawn in § 541.205 is not so stark.

KDFW claims that applying the § 541.205 distinction between production and administration in the white-collar setting would be contrary to the decisions in previous cases in which employees involved in what would be "production" under our definition were nevertheless held to be exempt administrators. Those cases fail to support KDFW's position. *Cobb v. Finest Foods, Inc.*,[54] which KDFW claims involved a chef whose primary duty was "producing" food, actually involved a chef whose primary duty was managing the hot food section of a contract food service operation. In contrast to the producers at KDFW, the chef had no direct on-the-job supervision; had a great deal of discretion in setting his own work schedule; trained, supervised, and set the work schedules for a number of employees; and planned the menus. In both *Adams v. St. Johns River Shipbuilding Co.*[55] and *Donovan v. Reno Builders*

**50.** 29 C.F.R. § 541.205(b).

**51.** Id. § 541.205(c).

**52.** *Dalheim I,* 706 F.Supp. at 507–08.

**53.** *Cf.* 29 C.F.R. § 541.2(a)(1) (services directly related to administration of client's business qualify as exempt work).

**54.** 755 F.2d 1148 (5th Cir.1985) (per curiam).

**55.** 69 F.Supp. 989 (S.D.Fl.), *rev'd on other grounds,* 164 F.2d 1012 (5th Cir.1947).

*Exchange, Inc.,*[56] which KDFW claims involved editors whose primary duties were "producing" periodicals, actually involved editors who were in charge of editing and publishing his or her respective periodical (though the editor in *Adams* was subject to wartime censorship). The courts accordingly found that their duties were "directly related to management policies or general business operations," as each was primarily responsible for the success or failure of the venture.

That is not the case with KDFW's news producers. Their responsibilities begin and end with the ten-to-twelve minute portion of the newscast they are working on. They are not responsible for setting business policy, planning the long– or short-term objectives of the news department, promoting the newscast, negotiating salary or benefits with other department personnel, or any of the other types of "administrative" tasks noted in § 541.205(b). The district court determined, based on the facts before it, that "[t]he duties of a producer clearly relate to the production of a KDFW news department product and not to defendant's administrative operations." That determination was not erroneous.

KDFW next asserts that the district court erred in holding that producers' work does not consist of carrying out "major assignments" of "substantial importance" to KDFW's business. Again, KDFW disputes the district court's factual conclusions and inferences, and again, its contention is without merit. KDFW was charged with proving that its producers are exempt employees. The only record evidence KDFW points to in support of its contention that producers' work is of "substantial importance," other than the evidence of what producers do, is that KDFW operates in the nation's eighth largest television market, and that local news is an important source of revenue for the station. The

"importance" of producers' work we are left to infer is that, if a producer performs poorly, KDFW's bottom line might suffer.

As a matter of law, that is insufficient to establish the direct relationship required by § 541.2 by virtue of the "substantial importance" contemplated by § 541.205(c).[57] The Secretary's interpretations specifically recognize that the fact that a worker's poor performance may have a significant profit-and-loss impact is not enough to make that worker an exempt administrator. "An employee's job can even be 'indispensable' and still not be of the necessary 'substantial importance' to meet the 'directly related' element."[58] In assessing whether an employee's work is of substantial importance, it is necessary yet again to look to "the *nature* of the work, not its ultimate consequence."[59] The nature of producers' work, the district court found, is the application of "techniques, procedures, repetitious experience, and specific standards" to the formatting of a newscast.[60] KDFW was obliged to demonstrate how work of that nature is so important to KDFW that it should be deemed "directly related" to business operations. It did not do so. Indeed, the evidence shows that the work one would think of as being "substantially important"—such as setting news department policy and designing the uniform "look" of the newscast—is done by employees who seem clearly to be exempt administrators: the executive producer and the news director, for example.[61] We therefore conclude that the district court did not err in holding that producers are not exempt administrators.

■ 3. *Producers as Executives.*—On appeal, KDFW argues that producers are exempt executives only in the context of arguing for a combination exemption. We address the issue briefly here as a prelude

**56.** 100 Lab.Cas. (CCH) ¶ 34, 516, 1984 WL 3149 (D.Nev.1984).

**57.** *See Clark v. J.M. Benson Co.,* 789 F.2d 282, 287 (4th Cir.1986).

**58.** *Dalheim I,* 706 F.Supp. at 508; *see* 29 C.F.R. § 541.205(c)(2); *Clark,* 789 F.2d at 287.

**59.** *Clark,* 789 F.2d at 287.

**60.** *Dalheim I,* 706 F.Supp. at 508.

**61.** Id. at 498–99, 507–08.

to the discussion of combination exemptions below.

To qualify for an executive exemption under the short test,[62] an employee's primary duty must consist of the "management of the enterprise" in which she is employed "or a customarily recognized subdivision thereof." In addition, the employee must customarily and regularly direct the work of two or more employees. The district court found that management was not the producers' primary duty, and that producers do not customarily direct the work of two or more employees.

We agree with the district court. The evidence establishes that, while the producer plays an important role in coordinating and formatting a portion of the newscast, the other members of the ensemble—that is, the reporters, technicians, assignment editors, and so on—are actually supervised by other management personnel. Producers perform none of the executive duties contemplated by the regulations, such as training, supervising, disciplining, and evaluating employees.[63] Indeed, this court previously upheld a determination by the National Labor Relations Board that neither producers nor directors nor assignment editors are "supervisors" within § 2(11) of the National Labor Relations Act.[64] Producers, therefore, do not "manage," and are not exempt executives.

■ 4. *The Combination Exemption.*—KDFW argues that the district court erred as a matter of law by failing to consider whether producers qualify for a combination exemption under § 541.600. Section 541.600 allows the "tacking" of exemptions only where (1) an employee performs more than one type of work that would be exempt except that (2) neither type of work alone can be termed the employee's primary duty, but (3) all of the putatively exempt work taken together

constitutes the employee's primary duty.[65] That is not the case here. The district court found that the producers at KDFW do *no* exempt work. This is not a case in which the producers do some administrative work and some executive work. Producers do neither administrative work nor executive work. Only the *reporters* do some exempt work, though that work is not their primary duty.[66] Obviously, an employer cannot tack various nonexempt duties and hope to create an exemption. As KDFW failed to prove that its producers do any exempt work, there was no need for the district court to consider a combination exemption. There was no error.

## C. *KDFW's Directors and Assignment Editors*

■ For the same reasons it asserts with respect to its producers, KDFW claims that the district court erred in concluding that its directors and assignment editors are not exempt either as executives or administrators or a combination thereof. KDFW's arguments with respect to directors and assignment editors thus fail for the reasons set out above. First, the evidence wholly fails to establish that the work of either directors or assignment editors is "directly related" to management policies or business operations, as required by § 541.2. Second, the evidence does not demonstrate that either directors or assignment editors "manage" anything, as required by § 541.1. KDFW's directors are, as the district court found, highly skilled coordinators, but they are not managers. Assignment editors have no real authority, and participate in no decisions of consequence. Finally, because neither directors nor assignment editors do any exempt work, the district court did not err in fail-

**62.** 29 C.F.R. § 541.1(e).

**63.** *See* id. § 541.102(b).

**64.** *NLRB v. KDFW–TV, Inc., Div. of Times Mirror Corp.,* 790 F.2d 1273, 1277–79 (5th Cir.1986).

**65.** *See International Association of Fire Fighters, Alexandria Local 2141 v. City of Alexandria,* 720 F.Supp. 1230, 1232, 1233–34 (E.D.Va.1989), *aff'd*

*without opinion,* 912 F.2d 463 (4th Cir.1990); *Cobb v. Finest Foods, Inc.,* 582 F.Supp. 818, 822 (E.D.La.1984), *aff'd,* 755 F.2d 1148 (5th Cir. 1985).

**66.** *Dalheim I,* 706 F.Supp. at 503–04.

ing to consider a combination exemption under § 541.600.

For the reasons stated above, the judgment of the district court is AFFIRMED.