Jim **ROBERTS**, Plaintiff,

v.

**NATIONAL AUTOTECH, INC.,** Defendant.

No. 3:00–CV–1279–M.

United States District Court, N.D. Texas, Dallas Division.

Jan. 24, 2002.

Janette Johnson, Attorney at Law, Jane, Legler, Byrne, Attorney at Law, Kurt, Compton, Banowsky, Attorney at Law, Christine, Neill, Huffman, Attorney at Law, Emily Michael Stout, Attorney at Law, Kyla Gail Reed, Attorney at Law, Janette, Johnson & Associates, Dallas, TX, for plaintiff.

Alan L. Busch, Attorney at Law, Robert Ruotolo, Attorney at Law, Todd Hoodenpyle, Attorney at Law, William R. Dorward, Attorney at Law, Gerard, Singer & Levick, Addison, TX, for defendant.

### MEMORANDUM OPINION AND ORDER

LYNN, District Judge.

Before the Court is the Defendant's Motion for Summary Judgment, filed on No-

vember 1, 2001. The Court finds the Plaintiff was an exempt executive employee for the majority of his employment with the Defendant. Therefore, the Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

## FACTUAL SUMMARY

On November 9, 1998, Jim Roberts ("Plaintiff") was hired to work at a City Garage facility of National Autotech ("National"), earning $800 per week.[1] Two days later, he was promoted to Store Manager, effective December 14, 1998. No pay increase accompanied this promotion, but on January 25, 1999, National approved a new pay plan for the Plaintiff, under which he would earn the greater of $800 per week or four percent of his store's profits. On June 7, 1999, the Plaintiff was again promoted, this time to the position of Group Supervisor, essentially checking the status and performance of two City Garage locations and their managers. His salary increased to $900 per week. On April 19, 2000, National's management structure apparently eliminated the Group Supervisor position and re-assigned Group Supervisors to single stores as Store Managers, without reducing their pay. Plaintiff remained a Store Manager during the rest of his time at National. The Plaintiff tendered a thirty-day notice of resignation on April 20, 2000, but continued to work until May 13, 2000. National paid him through May 20, 2000.

Each City Garage location has one Store Manager and two to four technicians or mechanics. Most locations have two Service Writers but some have a Service Writer and Manager Trainee. The Plaintiff worked as a Store Manager at both the Garland and Frankford Road City Garage locations. Each was staffed with five to six people during most of Plaintiff's tenure with National.

Plaintiff claims he was entitled to overtime compensation under the Fair Labor Standards Act ("FLSA"). National claims he was an exempt employee.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment.[2] However, the non-moving party, here the Plaintiff, must make a positive showing that a genuine dispute of material fact exists.[3] The record before the Court will be considered in the light most favorable to the Plaintiff.[4]

In FLSA cases, the employer claiming an exemption bears the burden of proving the exemption applies and exemptions are narrowly construed against the employer.[5]

## ANALYSIS

National contends that the Plaintiff was a salaried executive and/or administrative

---

**1.** A factual dispute, unresolvable by way of summary judgment, exists as to whether the Plaintiff was hired as a "Service Writer" or a "Manager Trainee."

**2.** *Kerr v. Lyford,* 171 F.3d 330, 336 (5th Cir. 1999).

**3.** *Kee v. City of Rowlett, Tex.,* 247 F.3d 206, 210 (5th Cir.2001), *cert. denied,*— U.S. ——, 122 S.Ct. 210, 151 L.Ed.2d 149 (2001).

**4.** *Taita Chem. Co. v. Westlake Styrene Corp.,* 246 F.3d 377, 385 (5th Cir.2001).

**5.** *See* 29 U.S.C. § 201, et. seq. (1995). *See also Idaho Sheet Metal Works v. Wirtz,* 383 U.S. 190, 209, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966); *Lott v. Howard Wilson Chrysler–Plymouth, Inc.,* 203 F.3d 326, 332 (5th Cir.2000); *Dalheim v. KDFW–TV,* 918 F.2d 1220, 1224 (5th Cir.1990).

employee of National and was thus exempt from the overtime regulations of the FLSA during the entire time he worked at National—from November 9, 1998 through May 20, 2000.[6] Roberts argues National violated the FLSA by failing to provide him with overtime compensation. He denies he was a salaried executive or administrative employee and further argues that on a day-to-day basis his duties as a Store Manager were virtually identical to those of a Service Writer, which position was recently deemed non-exempt by the Department of Labor.[7]

### A. Store Manager

The decision on whether an employee is entitled to overtime compensation is obviously based on an issue of fact as to the employee's hours worked. However, the ultimate decision whether an employee is *exempt* from the FLSA's overtime compensation provisions constitutes a question of law.[8] To determine whether an exemption applies, both sides agree that the Court should analyze the Plaintiff's job circumstances under the "short test." [9] National claims the Plaintiff was exempt as an executive and/or as an administrative

employee. An employee qualifies as an exempt *executive* under the short test if: the employee earned $250.00 or more per week in salary; his "primary duty" consisted of the "management of the enterprise" or of a customarily recognized department or subdivision of that enterprise; and he customarily and regularly directed the work of two or more other employees.[10] The applicable regulations include as management duties under this category of exemption: interviewing, selecting, and training of employees; setting and adjusting the rates of pay and hours of work; directing other employees' work; maintaining other employees' production or sales records for use in supervision or control; appraising other employees' productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling employee complaints and grievances and disciplining employees when necessary; planning the employee work; determining the techniques to be used; apportioning the work among the workers; determining the types of materials, supplies, machinery, or tools to be used or merchandise to be bought, stocked, and sold; and providing for the safety of the workers and their property.[11]

---

**6.** The FLSA provides that employers must pay overtime compensation to employees who work more than forty hours in a regular workweek. However, employees working in "a bona fide executive, administrative, or professional capacity" are exempt from the overtime requirement. 29 U.S.C. § 213(a)(1).

**7.** Stipulation Agreement between the U.S. Department of Labor Wage and Hour Division, and National Autotech, Inc.

**8.** *See Lott,* 203 F.3d at 330–31.

**9.** The short test applies to employees who make over $250.00 per week. 29 C.F.R. §§ 541.1(f), 541.119(a).

**10.** *See* 29 C.F.R. § 541.1(f) (1995). For exemption under the FLSA as an executive, the regulation describes an employee:

whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein. . . .

*Id.*

**11.** *See* 29 C.F.R. § 541.102(b). Paragraph (a) further includes as exempt any of those employees:

whose primary duty consists of . . . [t]he performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customer. . . .

An employee qualifies as an exempt *administrative* employee under the short test if: he earned more than $250.00 per week in salary;[12] his "primary duties" consisted of the performance of work directly related to management policies or general business operations of the employer or employer's customers; and his work required the exercise of discretion and independent judgment.[13] Decisions requiring discretion and independent judgment include those where "a person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance," and when one makes a "comparison and ... evaluation of possible courses of conduct and action or mak[es] a decision after the various possibilities have been considered."[14]

In deciding whether an employee was exempt, the Court must first make findings of historical fact, then draw inferences from the facts in applying the regulations and interpretations, and finally make an ultimate determination of whether the employee was exempt.[15] The inquiry into exempt status is intensively fact-bound and case specific.[16] Further, each of the two claimed exemptions require the Court to determine from its findings of historical fact what constitutes the employee's "primary duty." As a general rule, an employee's "primary duty" will typically involve over fifty percent of the employee's work time.[17] However, the duty cannot be ascertained by applying a simple "clock" standard that contrasts the amount of time each day an employee spends on exempt and non-exempt work.[18] In a situation

**12.** The Plaintiff has failed to negate the Defendant's proof that the "salary" element for the executive and the administrative exemption was satisfied. An employee is a salaried employee if he "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). "If employees are covered by a policy which allows deductions in pay for disciplinary reasons, or other deductions in pay as a practical matter, that person cannot be considered an exempt employee." *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). There must be an actual practice of making such deductions or the existence of an employment policy that creates a "significant likelihood" that such deductions will be made. *Id.; see also Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 264 (5th Cir.2000). Deductions made for absences of a full day or more for personal reasons or sickness do not mean an exemption applies. *Cowart*, 213 F.3d at 263–65. However, in this instance, although the Plaintiff apparently missed some days of work, his pay was not docked. Further, National presented summary judgment evidence that it had never made any deduction from the paycheck of a salaried employee because of absences of less than a full day. The only

rebuttal evidence the Plaintiff offers is the declaration of John Carmody, a former technician at National, who states that Terry Rae, a Store Manager at National, told Carmody that Rae was docked for absence from work. The testimony is unsubstantiated hearsay that the Court will not consider. *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000), *cert. denied*, 531 U.S. 1073, 121 S.Ct. 766, 148 L.Ed.2d 667 (2001). The Court's inquiry will thus probe the "primary duty" prong of the exempt executive and administrative analysis.

**13.** 29 C.F.R. §§ 541.2(e)(1), (e)(2).

**14.** 29 U.S.C.A. § 207(a).

**15.** *See Dalheim v. KDFW–TV*, 918 F.2d 1220, 1225 (5th Cir.1990).

**16.** *Id.* at 1224.

**17.** *Lott*, 203 F.3d at 331; *Dalheim*, 918 F.2d at 1227.

**18.** *Id. See also Smith v. City of Jackson*, 954 F.2d 296, 299 (5th Cir.1992) (fire chiefs and battalion chiefs were exempt even though the "vast majority of the work time of the plaintiffs [was] spent waiting to respond to an emergency dispatch"); *Paul v. Petroleum Equipment Tools Co.*, 708 F.2d 168, 172 (5th

where an employee spends less than fifty percent of his time in managerial duties, management may nevertheless be his primary duty if other pertinent factors support such a conclusion.[19] Some examples of the kinds of pertinent factors to be considered include the relative importance of the managerial duties as compared with other types of duties; the frequency with which the employee exercises discretionary powers; his relative freedom from supervision; and the relationship between his salary and the wages paid other employees for the kind of non-exempt work performed by the employee.[20] An overlay to these pertinent factors is the understanding that the employee's primary duty will usually be what he does that is of principal value to the employer, not the collateral tasks that he may also perform, even if they consume more than half his time.[21]

Case law on exempt status under the FLSA underscores the fact-specific nature of the inquiry. In *Dalheim v. KDFW–TV,* the Fifth Circuit affirmed the district court's denial of exempt executive, administrative, or professional status to general assignment reporters, producers, directors, and assignment editors employed in news and programming departments of a television station.[22] Although the television station argued the producers' work was of "substantial importance" to the station because they were responsible for the success or failure of television shows, the Court held otherwise:

> As a matter of law, that is insufficient to establish the direct relationship required by [ ] virtue of the 'substantial impor-

tance' contemplated by [the FLSA.] The Secretary [of Labor's] interpretations specifically recognize that the fact that a worker's poor performance may have a significant profit-and-loss impact is not enough to make the worker an exempt administrator. 'An employee's job can even be 'indispensable' and still not be of the necessary 'substantial importance' to meet the 'directly related' element.' In assessing whether an employee's work is of substantial importance, it is necessary yet again to look to 'the nature of the work, not its ultimate consequence.'[23]

Likewise, in *Blackmon v. Brookshire Grocery Co.,* employee meat market managers were found non-exempt, when they spent two-thirds of each week cutting meat rather than managing, but also ordered and prepared the products, maintained product quality and cleanliness in the meat market, evaluated applicants for employment in the meat market, oriented, monitored, and counseled new employees, and scheduled work assignments.[24] Significant to the Court was the skilled nature of the plaintiffs' craft. The importance of this expertise to the employer resulted in the Court's conclusion that meat cutting, rather than management, was their primary duty.

In contrast, the district court in *Kastor v. Sam's Wholesale Club* found a former bakery store manager for a wholesale club exempt from the FLSA's overtime provisions.[25] The plaintiff manager allegedly spent up to ninety percent of his time performing the same work as hourly em-

---

Cir.1983) (pilots were exempt despite the low percentage of actual flight time in comparison to time spent waiting).

**19.** *Dalheim,* 918 F.2d at 1227.

**20.** 29 C.F.R. § 541.103.

**21.** *Dalheim,* 918 F.2d at 1227.

**22.** 918 F.2d at 1224.

**23.** *Id.* at 1231 (citations omitted).

**24.** 835 F.2d 1135, 1137–38 (5th Cir.1988).

**25.** 131 F.Supp.2d 862, 866–67 (N.D.Tex.2001) (Lindsay, J.).

ployees and did not have final decision-making authority. The Court nevertheless found the plaintiff's "principal value" to the company was as a manager, scheduling employees, developing work schedules, communicating direction to employees, and recommending discipline. He was ultimately responsible for the daily operation of his bakery department. The plaintiff argued that many of his responsibilities were performed by simply filling out standardized company forms, a task that hourly employees often performed as well, and that he did not have independent authority to act, without first receiving supervisory approval, with respect to several managerial tasks. The Court found "unpersuasive" the plaintiff's attempts to filter himself from exempt status.

In *Lott v. Howard Wilson Chrysler–Plymouth,* the Fifth Circuit upheld the district court's denial of exempt executive status and finding of exempt administrative status.[26] There, the plaintiff, a former office manager for an automobile dealership, exercised discretion in preparing tax returns, monthly workman's compensation and state withholding returns, weekly payroll tax deposits, quarterly payroll tax returns, quarterly tax estimates, and other employee benefit information. The Court found her primary duties involved the exercise of discretion and independent judgment, thus conferring administrative status, but not the management of the office, thus denying executive status.

■ It is uncontested that the Plaintiff was, at all times, the highest ranking employee at his store. In that role, he supervised and directed the work of at least two employees. Neither *Lott, Dalheim,* nor *Blackmon,* all cited by Plaintiff, deal with such a situation. Further, although the Plaintiff attempts to minimize his supervisory functions, he stated in his deposition that he "asked [his] employees when training opportunities came up if they would like to take the classes" to try to motivate them to become more professional, and he ensured, under the guise of "quality control," "that the jobs were being done correctly" based on the "comeback" rate of customers. Plaintiff also oversaw the continued progress of the store through the generation and reporting of weekly profit reports in meetings with the Operations Manager. He also performed the following tasks: decided which vendors to use, albeit from a list; set schedules for at least some of the employees in his office; performed, whether formal or not, evaluations of the technicians and Service Writers in his office; disciplined the technicians and Service Writers; and recruited and hired at least one individual. After recommendations from the Plaintiff, National terminated several employees. Plaintiff claims credit for turning both the Garland and Frankford Road stores into profitable locations.[27] No Service Writer made as much money as did the Plaintiff. While the Plaintiff contends that the Store Manager and Service Writer positions were functionally the same, he acknowledges that Service Writers reported to Store Managers, who, in turn, reported to the Operations Manager.

Even if, as the Plaintiff contends, he spent the majority of his time performing duties of a Service Writer, such as answer-

---

26. 203 F.3d 326, 331–32 (5th Cir.2000).

27. The relevant deposition excerpt reads:

Q: What difficult management concerns did you identify and penetrate at City Garage?

A: Number 2 was—I turned Number 2 [Garland] around and made it into a profitable state. With Number 6 [Frankford Road] I turned it around and it was in a profitable state.

Q: And do you claim the credit for that?

A: Yes.

ing the phone, driving customers to and from work, going and getting parts that were not delivered on time, and cleaning the bathroom, the Plaintiff's primary importance to National was as manager of his store. As recognized by the First Circuit, a rigorous time allocation to a managerial type of setting is inapplicable in certain situations:

> [A] strict time division is somewhat misleading here: one can still be "managing" if one is in charge, even while physically doing something else. The 50 percent rule seems better directed at situations where the employee's management and non-management functions are more clearly severable than they are here.[28]

Holdings within this Circuit similarly reject rigid time allocations.[29] The Court is convinced that the Plaintiff, in his role as Store Manager, fell within the FLSA exemption for *executive* employees.[30]

■ In addition to the managerial type tasks discussed, the Plaintiff prepared a report entitled "Warranty Damage Line" report. In formulating the report, without being instructed by National to do so, the Plaintiff broke down from invoice to invoice warranty and damage information.[31] While this act exposes the exercise of discretion and independent judgment necessary to fall within the *administrative* exemption to the FLSA, the degree of discretion the Plaintiff actually exercised in his role as manager was apparently limited by the nature of the automotive industry and its dependence on technicians as a

scarce resource. The Operations Managers, and even, occasionally, the President, dealt with complaints raised by technicians (mechanics) who were performing non-exempt work. While these complaints should, in theory, have gone to the Store Manager for disposition, the Plaintiff explained the reason for the involvement of upper executives:

> Well, normally one of the ops managers had to get involved in [technician complaints] because the mechanics normally would run to an operations manager. The problem with automotive is that mechanics are so lean that they're so scared to lose them so you have to baby them, white kid gloves, the whole 9 yards with them.

With the mechanics leapfrogging their Store Managers, to lodge more serious complaints with Operations Managers, the Plaintiff's use of independent judgment and discretion in dealing with such complaints was partially stifled. Further, while the Plaintiff managed his store in the sense that he ensured it was running properly and profitably, handled customer complaints, gave "normal" refunds to customers, scheduled employees, and oversaw day-to-day operations, when a situation "outside the norm" presented itself, higher corporate management generally became involved. These situations included the granting of vacation requests, atypical refunds, and serious internal disputes. This scenario is in contrast to that presented in *Lott*, where the plaintiff office manager did not "manage" the office even though she

---

**28.** *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir.1982).

**29.** *See Dalheim*, 918 F.2d at 1227; *Kastor*, 131 F.Supp.2d at 866.

**30.** Given that the Plaintiff, in his brief time as Group Supervisor, supervised several Store Managers, who the Court finds are exempt executive employees, it is no great leap for the

Court to find the Plaintiff, as Group Supervisor, was also an exempt executive employee.

**31.** "[A]ctually I was not requested to prepare this report, I was requested to give [the operations manager] numbers of our warranty and our damage lines, not a report like this. He just wanted a round number. I broke it down from invoice to invoice for myself." Pl.'s Depo. at 138, Def.'s App. at 43.

exercised great discretion in performing accounting-related tasks.[32] She fell within the administrative exemption but not the executive exemption. Here, the Plaintiff's exercise of independent judgment and discretion was very limited as to matters of significance even though his primary importance to his employer was managing the store. The primary managerial duties of the Plaintiff's position, most of which were mechanical rather than discretionary, thus do not cause him to fit within the parameters of the administrative exemption of the FLSA, even though they do endow him with exempt executive status.[33]

## B. Service Writer or Manager Trainee

■ The parties dispute whether, during the five week period immediately after the Plaintiff was hired, he worked as a Manager Trainee or as a Service Writer. National contends he was a Manager Trainee; Plaintiff contends he was a Service Writer. Although the November 9, 1998 Personnel Action Form, signed by Randy Brown, lists the Plaintiff as a new hire for "Mgr Trainee," with "Ser" crossed out, the November 11, 1998 Personnel Action Form, filled out two days later and also signed by Randy Brown, reports a job change for the Plaintiff "from serv. writer to store mgr. effective 12.14.98." The Plaintiff also testified, in his August 20, 2001 deposition, that he went through Service Writer training with Rusty Reinhold. However, Scott Morrison, President, Chief Executive Officer, and Custodian of Records for National, stated in an affidavit that the Plaintiff worked as a Manager Trainee during the first five weeks of his tenure at National and that "[w]hile Roberts was a Manager Trainee, and the Store Manager was away from the store, Roberts was in sole charge of the store."

Although the record is indistinct on this point, the job title is not dispositive. Under either title, the Plaintiff did not exercise the degree of supervision, discretion, or control necessary to label him either an exempt executive or administrative employee.[34] Neither a Service Writer nor a Manager Trainee was the highest ranking employee in the store, and neither report-

---

**32.** *Lott*, 203 F.3d at 331–32. *See also Heidtman v. Cty. Of El Paso*, 171 F.3d 1038, 1041–42 (5th Cir.1999) (upholding the jury's finding that convention and visitors' bureau employees did not exercise discretion and independent judgment)

**33.** On December 6, 2001, the Defendant filed its Objections to the Plaintiff's Summary Judgment Evidence, arguing that the declarations of Jim Roberts, Bill Kerkstra, Daniel Muse, Rick Patterson, and John Carmody contained conclusory, contradictory, and unsupported assertions. The Court declines to strike the statements in total. However, to the extent the declarations contain conclusory statements or statements that contradict the Plaintiff's deposition testimony and no reason was given for the contradiction, each was not given weight. *See Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir.2000), *cert. denied*, 531 U.S. 1073, 121 S.Ct. 766, 148 L.Ed.2d 667 (2001) ("If a party who has been examined at length in deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."); *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir.1998) (bare allegations of fact, ultimate or conclusory facts, and legal conclusions cannot, by themselves, defend against summary dismissal). The Court agrees with the Defendant's Objections to Plaintiff's Summary Judgment Evidence and strikes the evidence as to the following declarations:

· Declaration of Jim Roberts, ¶ 3;
· Declaration of Bill Kerkstra, ¶¶ 5, 7–17, 18;
· Declaration of Daniel Muse, ¶¶ 8–19;
· Declaration of John Carmody, ¶¶ 5, 7–19.

**34.** The Department of Labor and National reached a Stipulation Agreement in March 2001, that Service Writers, "except for periods worked in sole charge of the employer's stores," were not exempt under the FLSA.

ed to the Operations Manager or "managed" the store. As stated by the Plaintiff, the Store Manager, not a Service Writer or Manager Trainee, was the individual responsible for seeing that things were done "right" at the store.

### CONCLUSION

The Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. The Court finds the Plaintiff, during his tenure as a Store Manager or Group Supervisor, was exempt as an executive employee under the FLSA. However, while a Manager Trainee or Service Writer, during the first five weeks of his employment with the Defendant, the Plaintiff was non-exempt.

**SO ORDERED.**