### G.W. COBB

### v.

### FINEST FOODS, INC., D/B/A A & G Cafeterias.

### Civ. A. No. 82–3999.

United States District Court,
E.D. Louisiana.

March 23, 1984.

---

Leroy H. Scott, Jr., Shreveport, La., Anne Woolhandler, New Orleans, La., for plaintiff.

Susan L. Brooks, New Orleans, La., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

Plaintiff, G.W. Cobb, filed suit pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq.* (hereinafter, the "Act"), alleging that defendant, Finest Foods, Inc., willfully failed to compensate plaintiff for overtime hours worked. Plaintiff seeks overtime compensation covering approximately one year of employment (August 20, 1979—September 30, 1980), together with liquidated damages and attorneys' fees. Defendant contends that plain-

tiff was exempt from the overtime provisions of the Act pursuant to 29 U.S.C. § 213(a).

## Findings of Fact

At the time he was initially employed by the defendant, plaintiff, who had over 30 years' experience in commercial food preparation, was hired as a cafeteria manager and no contention is made that he is entitled to overtime compensation during this period of time. On or about August 20, 1979, however, plaintiff was dispatched to Freed-Hardeman College to assist in establishing a new contract food service operation for Finest Foods. Plaintiff worked at the college approximately 3 months, at which time he returned to New Orleans to assist in converting several of defendant's cafeteria operations into smorgasbord operations. It is this time period during which plaintiff contends he was owed compensation for overtime work.

For clarity and ease of analysis, the court will focus on plaintiff's duties and responsibilities while at Freed-Hardeman College as it has been stipulated by the parties that those activities were essentially identical to the ones subsequently performed during the smorgasbord conversions.

1. Plaintiff was initially hired by defendant's former vice-president, John Hill, who had been plaintiff's supervisor at his previous job with another cafeteria. As vice-president, Mr. Hill was responsible for operation of defendant's cafeterias, set-up of new cafeterias, contract operations, smorgasbords and management of personnel.

2. Plaintiff's first job assignment was to temporarily manage the defendant's Carrollton cafeteria. At the time he was hired, both plaintiff and Mr. Hill anticipated that plaintiff would become a food service instructor as soon as plans for new operations and conversion of old units were implemented.

3. Plaintiff's starting salary was approximately $400.00 per week ($1,729.18 per month). This salary was increased to $458.00 per week ($1,829.18 per month) in June, 1981. At all times pertinent to this litigation, plaintiff received benefits such as medical and life insurance, pension fund contributions, a company automobile, gasoline, meals, lodging and laundry expenses. These benefits were not provided to defendant's hourly employees.

4. Prior to his first assignment as a food service instructor, plaintiff joined with another food service instructor, Janice Crawford, in the preparation of a new recipe book for defendant. Preparation of the book consisted of revising and updating the existing recipe book as well as developing some new recipes. This work was performed under the direct supervision of Mr. Hill.

Both plaintiff and Ms. Crawford used this cookbook in conjunction with the subsequent training of cooks at Freed-Hardeman College and at other locations.

5. On or about August 20, 1979, plaintiff and Ms. Crawford were assigned by Mr. Hill to be a part of a group sent to Freed-Hardeman College to establish a new contract food service operation. The group consisted of plaintiff, Ms. Crawford and William Sanders, the operations manager. Plaintiff and Ms. Crawford were assigned for the initial setup only. Mr. Sanders was to remain as permanent manager.

6. Plaintiff and Ms. Crawford were instructed by Mr. Hill to help Mr. Sanders standardize the operation, to train and supervise the kitchen personnel in accordance with defendant's procedures and policies and to insure the food was properly prepared and "on line" on time. To this extent, plaintiff was not given detailed instructions on the performance of these tasks nor was he subject to day-to-day supervision by Mr. Hill or anyone else.

7. Plaintiff and Ms. Crawford performed essentially the same duties except in different areas of the kitchen. Plaintiff worked in the hot foods department and Ms. Crawford worked in the salad and baking departments. His primary responsibility was to train and supervise the cooking

staff to insure that they turned out an acceptable product as efficiently as possible. In the course of these duties, plaintiff was responsible for the training and supervision of at least four cooks and several relief helpers.

8. In conjunction with training and supervising the cooking employees, plaintiff planned their workload, assigned work, apportioned the workload among the cooks and helpers, determined and taught the work techniques to be used by the cooks and helpers and directed and critiqued their work performance. In so doing, plaintiff had full control over the methods he used in training the employees. He determined what to teach, the method of instruction and when instruction was needed.

9. Plaintiff's primary responsibility was improving the cooks' efficiency in the preparation of hot foods and insuring that the food was properly prepared and placed on the serving line on time. Due to the nature of the operation, he primarily taught by example. In so doing, plaintiff performed a substantial amount of cooking himself.

10. Plaintiff at times advised Mr. Sanders on the planning of menus, participated in making up schedules, evaluated job assignments, participated in the drafting of production and time and duty sheets and made suggestions to the manager on the type and quantity of foods to be ordered. Plaintiff also participated in meetings with Mr. Sanders, Ms. Crawford and, on occasion, Mr. Hill to evaluate progress of the operation, discuss problems, and generally plot the management of the unit. No hourly paid employees were included in these meetings.

11. On occasion both plaintiff and Ms. Crawford would open or close at Freed-Hardeman and "cover" for the manager in his absence. While at the College, plaintiff was not required to punch a time clock as were the hourly employees which he supervised or turn in a list of hours worked. Plaintiff set his own hours and was free to come in and leave at whatever time he felt was necessary to get the job done.

12. While at Freed-Hardeman, plaintiff and Ms. Crawford, as home office instructors, were on an equal or higher level of management than Mr. Sanders. Plaintiff was paid $229.00 per month more than Ms. Crawford and $135.00 per month more than the manager, Mr. Sanders. Plaintiff also earned approximately $1,000.00 per month more than the highest paid hourly employee at the College. Food service instructors and district supervisors were on a level immediately below Mr. Hill in the Finest Foods management structure. The district supervisors directed the cafeteria managers in charge of the units in their district. The food service instructors worked in conjunction with the district supervisors to inform and assist the managers during operational setup and conversions.

13. After completing their work at Freed-Hardeman College, plaintiff and Ms. Crawford were next assigned to assist Mr. Hill in converting several of defendant's cafeteria operations to smorgasbord operations. As mentioned previously, plaintiff's duties in training and supervising the smorgasbord cooks were essentially the same as at Freed-Hardeman, including supervision of the cooking staff, planning and apportioning the workload, and standardizing food preparation procedures.

14. At no time during his employment at Freed-Hardeman or during the smorgasbord conversions did plaintiff complain to his employers about not receiving overtime compensation. This claim was filed with the Wage and Hour Administration approximately one year after he left Finest Foods. The Administration rejected plaintiff's claim for overtime compensation on the grounds that he was an exempt employee under the Act.

*Conclusions of Law*

1. This court has jurisdiction over this claim which arises under the Fair Labor Standards Act. 29 U.S.C. § 201 *et seq.*

2. The Fair Labor Standards Act requires employers to maintain records and pay overtime compensation to certain employees who work more than forty hours

per week. 29 U.S.C. §§ 207, 211(c), 215(a)(2) and 215(a)(5).

3. The Act, however, specifically provides exemptions from the overtime provisions for executive, administrative, and professional personnel. 29 U.S.C. § 213(a)(1).

4. There are two different methods of qualifying an individual for an exemption under the regulations. Under the "long test" method employees earning less than $250.00 per week must satisfy certain detailed criteria. If the employee is paid more than $250.00 per week, however, he must satisfy only the "short test" criteria to qualify for the high salaried exemption for executive, administrative, or professional employees. 29 C.F.R. 541.1, 541.2, 541.3. *See Marshall v. Western Union Telegraph Co.*, 621 F.2d 1246, 1252 (3rd Cir.1980). Because plaintiff earned a salary of more than $250.00 per week at all times material to this litigation, his eligibility for exemption under Section 213(a) is determined under the "short test."

5. The Wage and Hour Administration's regulations also permit the "tacking" of exempt work under one category to any other so that a person performing a combination of exempt work could qualify for an exemption where he would not have qualified solely under one exemption or another. 29 C.F.R. 541.600. Defendant contends that plaintiff qualifies as an exempt employee either as an administrator or an executive, or as a combination of the two.

■ 6. An employee is deemed to be an exempt executive under the short test if his primary duty consists of the management of the enterprise in which he is employed, or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more employees. 29 C.F.R. § 541.119. It is undisputed that plaintiff directed the work of two or more employees in the course of performing his duties for defendant. Furthermore, the court finds that the "hot foods" section of the various cafeteria operations where plaintiff worked were recognized departments or subdivisions of the overall enterprise. The

only question under this regulation is whether plaintiff's "primary duty" consisted of the management of the hot food section.

7. 29 C.F.R. § 541.103 lists five factors to be weighed in determining an employee's primary duty: (1) time spent in the performance of managerial duties; (2) relative importance of managerial and non-managerial duties; (3) the frequency with which the employee exercises discretionary powers; (4) the employee's relative freedom from supervision; and (5) the relationship between the employee's salary and the wages paid employees doing similar non-exempt work.

8. As to (1) above, Section 541.103 offers as a rule of thumb the proposition that "primary duty" means that work which occupies over 50% of an employee's time. That section goes on to specifically state that "time alone ... is not the sole test" and that an employee may "nevertheless have management as his primary duty if the other pertinent factors support such a conclusion."

■ 9. Plaintiff contends that he spent much less than 50% of his time instructing the cooks and their assistants or otherwise directing the activities of the employees who worked in his department of the cafeteria. He argues that his primary duty was the preparation of hot foods, not management. While it appears that plaintiff was personally responsible for producing a great deal of the food that was prepared each day, the court finds this one factor to be nonpersuasive. The nature of the cafeteria enterprise and the instruction techniques used by the defendant in training new cooks required plaintiff to produce a great deal of food. Plaintiff, himself, described the procedure he used as one of "teaching by example" so that all cooks were trained in a standardized, uniform manner, a concept critical to quality control in a cafeteria type operation.

10. Another factor indicating plaintiff's managerial function was his role with defendant's food service organization in a

general sense. Plaintiff was not permanently assigned to any of defendant's various operations but was transferred from place to place as new units were established or old ones converted. He was part of a "set up" team and his task was completed when that unit's cooks had been trained in the procedures of hot food preparation as required by the defendant. Viewed from this perspective, it is clear that although plaintiff performed a fair amount of non-exempt labor as a consequence of his day-to-day teaching activities, his primary duty was one of direction and management. *See, e.g., Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982); *Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir.1982); *Kelly v. Adroit, Inc.*, 480 F.Supp. 392 (E.D.Tenn.1979).

11. While the evidence as to the time plaintiff spent performing managerial duties is conflicting, the other "pertinent factors" supplied as guidelines for construing an individual's primary duty are more apparent: the top management of defendant considered plaintiff's managerial role paramount to his non-managerial work; plaintiff himself had no on-the-job supervision and had wide discretionary powers regarding personnel and hours worked; and that plaintiff's salary was in line with managerial salaries paid by defendant and well above the regular 40-hour weekly salaries received by the hourly employees. The evidence also indicates that plaintiff exercised a great deal of discretion and judgment in determining the methods of food preparation, training and supervising the cooks, scheduling employees and planning menus.

12. The court finds, therefore, that the factors listed in 29 C.F.R. § 541.103, when applied to plaintiff, weigh heavily towards a finding that he qualified under the executive exemption of the Act. *See Walling v. General Industries Co.*, 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); *Wainscoat v. Reynolds Electric & Engineering Co., Inc.*, 471 F.2d 1157 (9th Cir.1973); *Topel v. Northern Virginia Sun, Inc.*, 77 Lab.Cas. (CCH) 33,274 (E.D.Va.1973), *aff'd per cu-*

*riam*, 77 Lab.Cas. (CCH) 33,275 (4th Cir. 1975).

13. Defendant also contends that plaintiff gained exempt status as an administrative employee. An administrative employee qualifies for exemption under the short test if his primary duty is non-manual in nature including the performance of special assignments directly related to management policies or to general business operations, and his position includes work requiring the exercise of discretion and independent judgment. 29 C.F.R. § 541.214.

14. 29 C.F.R. § 541.205(c) provides some insight into the meaning of the phrase "directly related to the management policies or general business operations," indicating that the term is not limited to persons participating in the formulation of policies. It includes those employees who are charged with carrying out policy even though their assignments are tasks related to the operation of only a particular segment of the business. Three types of employees are described in Section 541.2(c) who, if they meet the other tests in Section 541.2, qualify for exemption as "administrative" employees. Defendant contends that plaintiff falls within the category of those who execute "special assignments" as defined in Section 541.201(a)(3). This catch-all category applies to employees who perform special assignments away from the employer's place of business and who exercise only general supervision as an administrative employee. Defendant argues that plaintiff's "special assignment" was to train and supervise the cooks and assist the unit managers in establishing defendant's policies and procedures.

15. It can not be disputed that plaintiff's position required the exercise of discretion and independent judgment. As mentioned previously, plaintiff exercised complete discretion in training cooks and determining the methods of food preparation. In fact, plaintiff was one of two employees responsible for the preparation of a cook book used in standardizing food production techniques at all of defendant's

operations. Additionally, the fact that plaintiff was considered to be a "home office" employee by the district managers lends credence to the argument that plaintiff's work directly related to management policies.

16. Finally, another factor weighed by the court is the fact that plaintiff at no time during his employment with defendant questioned defendant's policy of not paying him overtime. Plaintiff not only had full control over the hours he worked, he was not required to punch a time card as were the regular hourly employees. These circumstances and the fact that plaintiff did not file a claim for overtime compensation until approximately one year after leaving defendant, and only after defendant required him to honor a promissory note for the purchase of his company automobile, leads to the conclusion that neither plaintiff nor defendant considered him entitled to overtime compensation. *See Kelly v. Adroit, Inc., supra,* 480 F.Supp. at 394.

Considering all of the foregoing, the court finds that plaintiff qualified as an exempt employee under both the executive exemption and the administrative exemption of the Fair Labor Standards Act of 1938. As such, he did not fall within the purview of the wage and hour requirements of that Act.

Defendant is to prepare a judgment consistent with the above.