Dear Judge Harris:
Your request for an opinion has been forwarded to me for research and reply. In your request, you raise two distinct issues, which will be addressed individually. The first issue you raised is whether an "Administrator (department head)" is entitled to compensation for compensatory time upon termination of employment, and in the event he is, to what extent. Your second inquiry requests guidance on the most efficient manner for the Court to allocate and disburse partially collected funds from criminal fines and costs that have been in the Court's possession for approximately thirty (30) years.
I. Are Administrative Employees Entitled toCompensation for Compensatory Time? A. Brief Factual Overview
For the first issue, you provided the following facts: Mr. Ronnie Leger served as the Judicial Administrator of the City Court of Opelousas under your predecessor, Judge Kenneth Boagni, Jr., for approximately twenty-six (26) years. He also served under your administration from January 1, 2009 until his termination date, April 30, 2009. In your letter you also advise us that Mr. Leger's salary was paid by both the City of Opelousas and Opelousas City Court. Mr. Leger has requested that the Opelousas City Court pay him for compensatory time of 1,367.5 hours not used during his employment.[1] *Page 2 
You have advised us that there is disagreement between the parties regarding the following information submitted to our Office: For instance, one factual matter in dispute is whether Mr. Leger had, in fact, accumulated 1,367.5 hours of compensatory time. Although Mr. Leger has informed your office that he is entitled to $53,736.20 in compensatory wages for 1,367.5 hours of compensatory work, you explicitly stated in your request to our Office that there is no documentation to support his position. Another factual issue in dispute is whether the City Court of Opelousas has a policy manual signed and endorsed by any judge, containing a provision authorizing a Judicial Administrator to receive payment for unused compensatory time upon retirement. Despite the information supplied that indicates that another policy and personnel manual may exist for the City of Opelousas, your Office maintains that only one policy manual is in effect and it contains no provision authorizing compensatory time for Judicial Administrators (department heads).
Additionally, your predecessor, retired Judge Kenneth Boagni, Jr., sent your office a letter certifying that he "did authorize [his] Clerk/Judicial Administrator, Ronald Leger, to earn and accumulate Compensatory Time, also known as `K' time,"[2] and that "[it] was not [his] policy to have [Ronald Leger] use his time in the same year it was earned and any accumulated time would be paid to him at his retirement."[3] You have stated that you have reviewed this letter. However, it is your position that the City Court of Opelousas had no such written policy. Clearly, this is another issue of fact that currently in dispute and contention.
Initially, it is important to address this Office's fundamental policy when there are disputed issues of fact. Since 1918, it has been our Office's policy that there will be no opinions rendered on issues of fact.[4] Therefore, this office may not determine whether Mr. Leger's compensatory time can be authenticated. We are also unable to take a position on which personnel manual actually applies in this matter, since this is another issue with underlying facts that are disputed. Furthermore, even if there were no other factual disputes, whether an Administrator is exempt from compensatory time requires a fact-intensive inquiry into the associated job responsibilities and duties performed by the administrative employee. Such a determination of fact would contravene this Office's policy against making factual determinations. Nonetheless, we may and have provided you with an overview of the law as it applies to your request. *Page 3 
 B. In General, are Administrators Entitled toCompensation for Compensatory Time Upon Termination ofEmployment?
Your first inquiry to this Office is whether Administrators (department heads) are entitled to compensatory time upon termination of their employment. Federal laws and regulations directly address this issue. The Fair Labor Standards Act (FLSA) requires all employers to provide their employees who work more than forty hours in a seven-day work-week with compensatory time, unless their employer proves that one of the FLSA's overtime exemptions applies.[5] The FLSA provides an exemption for administrative employees. More precisely, under the FLSA "any salaried employee `employed in a bona fide executive,administrative, or professional capacity'" is exempt from the FLSA's overtime compensation provisions.[6] Notably, one's job title alone is insufficient to establish that an individual's position qualifies as an administrative position.[7] Rather, the employee's salary and duties must be examined to assess whether they satisfy the requirements of the regulations governing the administrative exemptions.[8]
The federal regulations define the administrative exemptions for employees at 29 C.F.R. § 541.200(a).[9] The federal regulations provide that an exempt administrative employee meets the following three requirements: (1) he is compensated at a rate of not less than $455.00 per week, exclusive of board, lodging, or other facilities; (2) "[his] primary duty is the performance of office or *Page 4 
non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) "[his] primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."[10]
The regulations offer further assistance in defining certain terms used in the administrative exemptions.
For instance, an administrative employee's "primary duty" must be "work directly related to the management or general business operations of the employer or the employer's customers."[11] In fact, the regulations further explain that to qualify for the administrative exemption, an employee's "`primary duty' must be the performance of exempt work."[12] The regulations explain that while the amount of time spent by an employee working on a job related duty may be helpful in determining if the exemption applies, cautionary language is included emphasizing the fact that "[t]ime alone . . . is not the sole test."[13] Generally, however, an employee who spends fifty percent or more of their time performing "exempt" work will satisfy the primary duty requirement.[14]
Consistent with the federal regulations, the Fifth Circuit has held that while an employee's "primary duty" will typically require over fifty percent of his work time, this is not the sole parameter to be weighed.[15]
According to federal regulations, in order for the administrative exception to apply, an employee's primary duty must involve the exercise of discretion and independent judgment in the performance of his job duties.[16] The regulations state that, "[i]n general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been *Page 5 
considered."[17] The following list (reproduced verbatim) is demonstrative, but not inclusive, and provides some of the factors that may be considered in weighing this factor:
• whether the employee has the authority to formulate, affect, interpret, or implement management policies or operating practices;
• whether the employee carries out major assignments in conducting the operations of the business;
• whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;
• whether the employee has the authority to commit the employer in matters that have significant financial impact;
• whether the employee has authority to waive or deviate from established policies and procedures without prior approval;
• whether the employee has the authority to negotiate and bind the company on significant matters;
• whether the employee provides consultation or expert advice to management;
• whether the employee is involved in planning long-or short-term business objectives;
• whether the employee investigates and resolves matters of significance on behalf of management; and
• whether the employee represents the company in handling its complaints, arbitrating disputes or resolving grievances.
29 C.F.R. § 541.200(b). Notably, the regulations emphasize the fact that an employee may still satisfy the element of exercising discretion and independent judgment even if "the employee's decisions and recommendations are reviewed at a higher level."[18]
As to this particular regulatory factor, the Fifth Circuit has held that the "exercise of discretion and independent judgment must relate to matters of consequence," but the need for "[f]inal decision making authority over matters of consequence is unnecessary."[19]
In sum, "an administrative employee is an employee [who has attained a certain salary requirement and] whose primary duty consists of office or nonmanual work directly related to management policies or general business operations for the *Page 6 
employer or the employer's customers, which includes the work requiring the exercise of discretion and independent judgment."[20]
 C. Exception to the General Rule RegardingAdministrators and Compensatory Time
Whether Administrators are entitled to compensatory wages can also pivot on whether the employer and employee have any expressed or implied contract or agreement between them, and whether the employer has acted in a manner to instill the expectation that the Administrator should expect to receive a benefit. As explained inKnecht v. Board of Trustees for State Colleges and Universitiesand Northwestern State University, 591 So.2d 690, 694 (La. 1991), "[o]ne who proposes the contract is bound if the offer is made in terms, whether by words, actions, silence or inaction, which evince a design to give the other party the right of concluding by assent, and the other party timely assents." Therefore, if a policy and procedural manual has any provision that expressly authorizes the payment of compensatory time to an Administrator, then arguably a contractual offer has been made subject to the specific language of the manual itself.
Furthermore, if an employer, such as the City Court of Opelousas, promises a benefit to its employees, "and [its] employees accept by their actions in meeting the conditions, the result is not [a] mere gratuity or illusory promise but a vested right in the employee to the promised benefit."[21] Thus, it can be reasoned that when an employer acts in such a manner as to instill an expectation that its employee, even an Administrator, should reasonably expect to receive some benefit that he has been promised, then the employer should be ready to compensate the employee, Administrator or not, for this "benefit" (i.e., compensatory wages) once the benefit has vested.
In this case, based upon Judge Boagni's April 13, 2009 letter to your office, he may have had an "understanding" with Mr. Leger regarding compensatory time. According to his letter, Judge Boagni authorized his "Clerk/Judicial Administrator, Ronald Leger, to earn and accumulate Compensatory Time . . ." and that it was not his "policy to have [Mr. Leger] use his time in the same year it was earned and any accumulated time would be paid to him at his retirement."[22] Once again, however, this Office finds itself confronted with an issue of fact. In order to determine if Mr. Leger is entitled to compensatory time through this "understanding," this Office would have to serve as a fact-finder and decide whether Mr. Leger actually had accepted the terms of this "understanding" *Page 7 
through his behavior and actions (i.e., accruing overtime). This Office may not make such a factual determination.
For reasons previously stated, our Office may not make a factual determination on whether Mr. Leger's actions or behavior indicated any acceptance of Judge Boagni's policy or understanding. To do so would require our Office to make a factual determination on a contested issue of fact. As it is against our Office's policy to render any opinions in which we would have to serve as finders of fact, this particular issue may be better determined by a court of competent jurisdiction.
II. How Should the Court Allocate the PartiallyCollected Fines and Costs from Criminal Defendants Over the PastThirty (30) Years? A. Brief Factual Overview
In light of the second issue you have presented to our Office in writing and through subsequent communications, [23] you have supplied the following facts: You were recently informed by the accounting and auditing firms for the City of Opelousas that there are approximately $180,000.00 in fines and costs that have been on the court's financial records since the 1980s. These fines are comprised of partial payments of criminal fines and costs from individual defendants over the past three decades. Your office has issued bench warrants to recover the outstanding balance owed on these individual fines to no avail. Nonetheless, your office is seeking guidance on how the funds collected thus far should be allocated to the appropriate recipients. More precisely, due to the vast span of time that has elapsed, the fiscal years that have expired, the various changes in the laws and statutory authority, and amendments to fee schedules, you are seeking guidance on how to allocate the $180,000.00 in fines and costs for the "voluminous" number of identified cases so that these monies may be appropriately disbursed. *Page 8 
 B. Legal Analysis
Your second inquiry requests our Office to advise you on whether you may allocate the collected fines and costs in your office's possession en globo, or whether each case has to be individually examined in order to allocate the monies to the appropriate recipients.[24] In other words, could your office simply take a percentage of the $180,000.00 and disburse it to the appropriate agencies, or would your office need to evaluate and analyze each individual defendant's file and pro-rate each individual defendant's share of the total ($180,000.00) accordingly?
The disposition of fines, forfeitures, penalties, and costs is addressed in La.R.S. 13:1898 and La.R.S. 13:1899.
La.R.S. 1898 states in pertinent part as follows:
 A. Except as otherwise provided by special law and in Subsection B thereof, the clerk of the city court or the marshal, as designated by the judge, shall collect all fines, forfeitures, penalties, and costs, and all funds so collected by them, excluding costs, shall be paid into the city treasury when the prosecution is on behalf of the city and into the parish treasury to be deposited in the parish general fund and used as a general expenditure of said parish, in parishes other than Orleans, when the prosecution is on behalf of the state or parish.
 . . . . C. The clerk of the city court or the marshal may accept payment by credit card for all fines, forfeitures, penalties, and costs. The clerk of the city court or the marshal shall collect a fee for processing the payments in an amount that is reasonably related to the expense incurred by the clerk or marshal in processing the payment by credit card, not to exceed five percent of the amount of taxes and any penalties or interest being paid. The fee shall be in addition to the amount of fines, forfeitures, penalties, or costs.
In addition, La.R.S. 13:1899 provides as follows:
 A. Except as otherwise provided by law, in all criminal matters, including traffic violation cases, in addition to the fine or other penalty which may be legally imposed against every defendant who is convicted after trial or after a plea of guilty or who forfeits his *Page 9 
bond, the judge may assess costs of court in an amount not to exceed thirty dollars.
 B. Except as otherwise provided by law, the proceeds derived from these costs shall be deposited in a special account which shall be subject to audit, and used for the operational expenses of the court or for the payment of clerical fees or other similar expenditures as may be approved by the judge.
 C. In all criminal matters, when the office of the marshal has derived one hundred thousand dollars or more in revenues for the year 2004 from costs assessed pursuant to this Subsection, the city judge shall assess, in addition to the costs assessed in Subsection A, the sum of fifteen dollars as additional costs of court. In all criminal matters, when the office of the marshal has derived less than one hundred thousand dollars in revenues for the year 2004 from costs assessed pursuant to this Subsection, the city judge shall assess, in addition to the costs assessed in Subsection A, the sum of thirty dollars as additional costs of court. The proceeds shall be deposited in a special account, separate and distinct from the account provided for in Subsection B of this Section, which account shall be in the name of and under the control of the marshal or constable of the court, shall be subject to audit, and shall be used to defray operational expenses of the office of marshal or constable of the court, all as may be useful and necessary for the proper conduct of the marshal's or constable's office, or for purchase of law enforcement equipment, and all as may be proved by the marshal or constable. The city judges of any and all parishes and the mayor's court in the town of Many in Sabine Parish shall be authorized to assess such sum in accordance with this Section. Assessments in particular courts are governed by the following: . . .
Unfortunately, neither of these statutes address the issue you have raised, nor has this Office identified any other statutory or jurisprudential authority relevant to your inquiry. Therefore, this Office is unable to find any firm legal authority that would authorize your office to use an en globo method for allocating the $180,000.00 in fines and costs in your office's possession, or that would protect your office from any claims by potential recipients who might challenge such an en globo allocation as improper. However, it would appear that if the agencies entitled to the funding could reach an agreement regarding the appropriate method for allocating the funds, then this might resolve the issue you have presented to our Office. Yet, in the event such an agreement cannot be reached, then the correct and prudent manner to proceed would be to invoke a concursus *Page 10 
proceeding in an appropriate court, so that your office could allocate the funds appropriately pursuant to a court order.
We hope that this information sufficiently answers your inquires. If we can be of further assistance, please do not hesitate to contact us.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By: __________________________ KATHERINE K. GREEN Assistant Attorney General
 JDC:KG:jv
[1] Your opinion request did not ask our Office to determine whether the City Court of Opelousas or the City of Opelousas is responsible for paying any compensatory wages that may be owed to an Administrator (department head) or Mr. Leger.
[2] Letter to Judge Vanessa Harris from Retired Judge Kenneth Boagni, Jr., 4/13/09.
[3] Id.
[4] La. Op. Att'y. Gen. 445(1918-19).
[5] 29 U.S.C. § 207(a)(1); Vela v. City of Houston,276 F.3d 659, 666 (5th Cir. 2001).
[6] Id. § 213(a)(1); Cowart v. Ingalls Shipbuilding,Inc., 213 F.3d 261, 264 (5th Cir. 2000) (emphasis added).
[7] 29 C.F.R. § 541.2.
[8] Id.
[9] It is important to note that new federal regulations were enacted in August 2004. In Kohl v. Woodlands Fire Dept.,440 F.Supp.2d 626 (S.D.Tx. 2006), the federal district court explained that "[u]nder [the old regulations], the Secretary of Labor . . . defined the terms executive, administrative, and professional, by setting out `long' tests for employees earning more than $155 per week but less than $250 per week, and `short' tests for employees earning more than $250 per week."Id. at 633 (citing Lott v. Howard Wilson Chrysler-Plymouth,Inc., 203 F.3d 326, 331 (5th Cir. 2000) (citingDalhiem v. KDFW-TV, 918 F.2d 1220, 1224 (5th
Cir. 1990)). The Kohl court reasoned that the "new regulations were not expressly made retroactive," and that "`[t]he Fifth Circuit [had] refused to apply other FLSA statutory — not regulatory — amendments that were not expressly made retroactive."Id. at n. 2. Relying on this rationale, the Kohl court concluded that because the plaintiff's employment ended before the amended regulations became effective, the pre-2004 regulations were applicable and could be used for clarification and consultation as the new regulations were not inconsistent with the old regulations.Id.
[10] 29 C.F.R. § 541.200(a).
[11] Id. § 541.201(a).
[12] Id. § 541.700(a).
[13] Id. § 541.700(b).
[14] Id.
[15] See, Lott v. Howard Wilson Chrysler-Plymouth, Inc.,203 F.3d at 331; Smith v. City of Jackson, Miss.,954 F.2d 296, 299 (5th Cir. 1992) ("In the ordinary case an employee's primary duty involves over 50% of the employee's work time; however, this usual rule-of-thumb may be varied, depending on the importance of the managerial duties as compared with other duties, frequency of exercise of discretionary power, freedom from supervision, and comparative wages.").
[16] 29 C.F.R. § 541.202(a).
[17] Id.
[18] Id. § 541.200(c).
[19] Lott v. Howard Wilson Chrysler-Plymouth, Inc.,203 F.3d at 331.
[20] Id.; 29 C.F.R. §§ 541.200(a)(1)-(a)(3).
[21] Id. at 695 (emphasis added).
[22] Letter to Judge Vanessa Harris from Retired Judge Kenneth Boagni, Jr., 4/13/09.
[23] Subsequent to receiving your opinion request, our Office contacted you in order to clarify your concerns about this particular issue. You informed our Office that you had concerns about how to allocate the criminal fines and costs collected thus far so that they might be properly distributed to the appropriate recipients. Specifically, you wanted to know if you had to review each defendant's file to determine their individual portion of the collected fines and allocate a percentage of that payment to the appropriate recipients on a pro rata basis. You indicated that a less burdensome alternative for your office, if permissible, would simply entail apportioning the designated percentage allocated to each recipient of the $180,000.00 total of partially collected fines and costs en globo. At this time you also indicated that you were not seeking guidance on the collection of the remaining outstanding fines and costs owed to your office in this opinion request. Telephone conversation with Judge Harris, 7/27/09.
[24] Id.