**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 8/28/96**

**TENTH CIRCUIT**

---

STEPHEN H. BOHN,           )
                                        )
         Plaintiff-Appellant,       )
                                          )
        v.                         )        No. 95-4086
                                          )
PARK CITY GROUP, INC. and      )
RANDY FIELDS,              )
                                          )
        Defendants-Appellees.    )

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 94-CV-521)

---

Robert H. Wilde (Suchada P. Bazzelle with him on a brief), Midvale, Utah, for Plaintiff-Appellant.

Deno G. Himonas (Randall N. Skanchy, also of Jones, Waldo, Holbrook & McDonough, with him on the briefs), Salt Lake City, Utah, for Defendants-Appellees.

---

Before **BALDOCK, LOGAN** and **BRISCOE,** Circuit Judges.

---

**LOGAN**, Circuit Judge.

---

Plaintiff Stephen H. Bohn sued defendants Park City Group, Inc. and Randy Fields, claiming he performed overtime work for which he was improperly denied time and a half pay required by the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 207 and 213. On cross-motions for summary judgment the district court granted judgment for defendants, finding that plaintiff was exempt from the FLSA because he was a professional employee. Plaintiff appeals, asserting that because genuine issues of material fact remained the district court should not have granted summary judgment.[1] Defendants assert we have no jurisdiction because plaintiff's notice of appeal, filed after the final judgment, purported to appeal only an earlier partial summary judgment, a nonfinal order.

## I

We first address the threshold issue whether we have jurisdiction over this appeal. On May 8, the district court entered its order dismissing plaintiff's complaint. That order was not a final appealable order because it did not dispose of Park City Group's counter-claim that plaintiff had failed to repay a promissory note he executed when he borrowed $500 from Park City Group under the Employee Computer Purchase Plan. See Atiya v. Salt Lake County, 988 F.2d 1013, 1016 (10th Cir. 1993) (holding that order adjudicating fewer than all claims and liabilities of all parties is not a final appealable order unless

---

[1] Plaintiff also argues that the district court erred in denying his motion to strike an affidavit of Linda Hack offered by defendant after the summary judgment briefs were filed. We do not discuss this issue because its resolution makes no difference in our disposition of the appeal.

certified under Fed. R. Civ. P. 54(b)).  The district court's order granting Park City Group's summary judgment on the counterclaim, entered on May 15, 1995, disposed of all claims and thus was a final judgment.

Plaintiff's notice of appeal, filed within thirty days after the final judgment as required by Fed. R. App. P. 4(a)(1), sought review of "the order dismissing his complaint herein entered in this action on the 8th day of May, 1995."  Appellant's App. 277.  Defendants argue that plaintiff's notice of appeal did not designate a final order, and thus did not meet the Fed. R. App. P. 3(c) requirement that the "notice of appeal . . . must designate the judgment, order, or part thereof appealed from."

We recognize that Fed. R. App. P. 3 requirements are jurisdictional.  See Torres v. Oakland Scavenger Co., 487 U.S. 312, 314 (1988).  But "[t]he requirements of Rule 3 should be liberally construed.  '[M]ere technicalities' should not obstruct the consideration of a case on its merits."  Nolan v. United States Dep't of Justice, 973 F.2d 843, 846 (10th Cir. 1992) (quoting Foman v. Davis, 371 U.S. 178, 181 (1962) (alteration in original) (other citations omitted)).

In this case plaintiff's notice of appeal, filed after the district court entered a final judgment, specified the only order--and issue--that plaintiff intended to appeal.  In Lewis v. B.F. Goodrich Co, 850 F.2d 641, 645 (10th Cir. 1988) (en banc), we held that a premature notice of appeal from a nonfinal order ripened when other claims were dismissed after the notice of appeal was filed.  In Lewis not only did the notice of appeal

3

name an order that was not a final order (as in this case); the notice was filed before the final judgment in the case was entered. Thus, we accepted the notice which specified appeal of a nonfinal order as sufficient under the Rule 3(c) requirement to name the judgment or order appealed from. See also Vargas v. McNamara, 608 F.2d 15, 21 (1st Cir. 1979) (plaintiff's notices of appeal were worded to appeal from directed verdicts rather than judgment; technical error should not defeat consideration on merits where "there was never any doubt as to the subject matter of the appeal").

In the instant case defendants had clear notice of the issue being appealed and will not be prejudiced. We hold that we have jurisdiction.[2]

---

[2] In supplemental authority defendants cite and rely on Long v. Union Pac. R.R., 206 F.2d 829 (10th Cir. 1953). In Long, a notice of appeal from the district court's ruling excluding evidence, timely filed after the final judgment was entered, failed to "designate the judgment or part thereof appealed from" (as then required by Fed. R. Civ. P. 73 (b)). Because the notice of appeal made "no reference whatever to the final judgment," Long held there was no jurisdiction, declining to "read into the notice something that is not there." Id. at 830. This old case is inconsistent with the more generous approach of the current Fed. R. Civ. P. 3, and our more recent cases. We consider our en banc opinion in Lewis to have overruled Long even though it did not cite that case. See also Cooper v. American Auto. Ins. Co, 978 F.2d 602, 608 (10th Cir. 1992) (order granting government dismissal of claims was appealable although plaintiff's notice of appeal failed to reference it when plaintiff's intent to appeal dismissal of those claims was clear and government was not misled); Wright v. American Home Assurance Co, 488 F.2d 361, 363 (10th Cir. 1973) (notice purporting to appeal from an order denying a JNOV or new trial was sufficient to confer jurisdiction of appeal on the merits; rejecting technical application of the rule where appellant's intent "to seek review of the judgment is manifest"); cf. Averitt v. Southland Motor Inn of Oklahoma, 720 F.2d 1178, 1180 (10th Cir. 1983) (when notice of appeal stated that defendants appealed only final judgment on punitive damages issues, and parties agreed not to appeal other issues, defendants cannot then appeal more). We have circulated this opinion among all judges of this court in regular active service. All judges have expressed agreement with the conclusions herein

(continued...)

4

II

Plaintiff was employed by Park City Group from October 26, 1992, to December 31, 1993, in the software and training departments as a technical writer or documenter. He received a $47,000 annual salary plus bonuses. After Park City Group terminated plaintiff's employment for inadequately performing his duties, he filed this suit, asserting that he was entitled to overtime pay under the FLSA. After a hearing, the district court granted summary judgment for defendants, finding that plaintiff was exempt from the FLSA overtime provisions because his primary duty was as either a computer professional or an artistic professional. Plaintiff challenges that ruling.

We review de novo the district court's grant of summary judgment applying the same standard used by the district court. Panis v. Mission Hills Bank, 60 F.3d 1486, 1489-90 (10th Cir. 1995), cert. denied, 116 S. Ct. 1045 (1996). We must view the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Deepwater Investments, Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). We will uphold summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

We first review the legal framework for our analysis. The FLSA requires employers to pay overtime to employees who work more than forty hours per week and are not

---

[2](...continued)
respecting overruling Long.

5

specifically exempted. 29 U.S.C. § 207(a)(1). Employees performing in a "bona fide executive, administrative, or professional capacity" are exempt. Id. § 213(a)(1). It is the employer's burden to prove that a plaintiff falls within the professional exemption, Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974), and the exemption is construed narrowly against the employer who seeks to assert it. See Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). "[T]he inquiry into exempt status under [§ 213(a)(1)] remains intensely fact bound and case specific." Dalheim v. KDFW-TV, 918 F.2d 1220, 1226 (5th Cir. 1990).

The regulations implementing the FLSA define the requirements for exemptions, and include a "long test" and a "short test." 29 C.F.R. § 541.3. It is uncontested in the instant case that plaintiff's annual salary subjected him to the "short test," because he met the minimum salary requirement of $250 per week. Id. § 541.3(e). The short test for the professional exemption also requires a showing that the employee has as his "primary duty" work that requir[es] the consistent exercise of discretion and judgment" and which consists of the following:

> (1) Work requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of special-ized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, or
> . . . .
> (3) Teaching, tutoring, instructing, or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in the school system or educational establishment or institution by which he is employed, or

6

(4) Work that requires theoretical and practical application of highly-specialized knowledge in computer systems analysis, programming, and software engineering, and who is employed and engaged in these activities as a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker in the computer software field, as provided in § 541.303.

29 C.F.R. § 541.3. An employee also meets the short test if his primary duty consists of "work requiring invention, imagination, or talent in a recognized field of artistic endeavor." See id. The district court apparently found that based on undisputed facts plaintiff's primary duty involved work either as a professional in an artistic endeavor or as a computer professional.

The regulations state that although determining the "primary duty" of an employee depends on "all the facts in a particular case," "a good rule of thumb [is] that primary duty means the major part, or over 50 percent, of the employee's time." Id. § 541.103. The regulation goes on to caution, however, that time itself is not dispositive. "At least under the short tests, the employee's primary duty will usually be what [he] does that is of principal value to the employer, not the collateral tasks that [he] may also perform, even if they consume more than half [his] time." Dalheim, 918 F.2d at 1227. Plaintiff asserts that the district court erred in granting summary judgment because questions of material fact remained concerning his actual duties that precluded a determination that his primary duty fell into either the computer professional or artistic professional category.

III

7

We first address if genuine issues of material fact existed whether plaintiff's primary duty included the performance of work described in 29 C.F.R. §§ 541.3(a)(4) and 541.303 as a "similarly skilled worker in the computer software field." In order to qualify for this exemption an employee's primary duty must consist of one or more of the following:

> (1) The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
> (2) The design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including proto-types, based on and related to user or system design specifications;
> (3) The design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
> (4) a combination of the aforementioned duties, the performance of which requires the same level of skills.

29 C.F.R. § 541.303(b). We have found no case law interpreting the relatively new "computer professional exemption." 57 Fed. Reg. 46742 (setting Nov. 9, 1992 effective date). Cf. Houk v. SEI Tech. Serv. Co., 657 F. Supp. 1014, 1016 (W.D.N.C. 1987) (suggesting that practice in industry at that time was to treat a technical writing editor of computer program manuals as exempt professional); Gorman v. Continental Can Co., 1985 WL 5208 (N.D. Ill. 1985) (describing electronic data processing concepts, defini-tions and required skill levels for different job descriptions), modified, 1986 WL 335 (1986).

"The level of expertise and skill required to qualify for this exemption is generally attained through combinations of education and experience in the field. While such

employees commonly have a bachelor's or higher degree, no particular academic degree is required for this exemption." 29 C.F.R. § 541.303(c). Plaintiff graduated in 1981 from Southwest Missouri State University with a bachelor of science degree in elementary education. In 1982-84 plaintiff earned at least thirteen semester hours toward an M.A. in Educational Media and Technology at Brigham Young University. His resume lists "skills and knowledge areas" in numerous "computer technologies." Appellant's App. 250, 253. Before his employment with Park City Group, plaintiff worked for a producer of video special-effects equipment as a "project manager/training specialist," where he managed training materials and "[a]uthored several major volumes of installation, operation, and service manuals." Id. at 250. He also worked as a "training and documentation manager" for a software company. Id. Before attending college, plaintiff was trained in the Navy electronics and aviation technology program. Id. Overall, plaintiff's education and experience allow but do not compel a finding that he had the skill and expertise required to meet the computer professional exemption. Further, "the determinative factor is the job requirement and not the education in fact acquired by the employee." Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1565 (11th Cir. 1991).

Park City Group hired plaintiff as a "documenter at the documentation project manager level" to work on a team of employees--including two testers and three developers (programmers). See Appellees' Supp. App. 27-28, 66. The job description for a documentation project leader at that time stated the following:

9

. Comfortable with several operating systems and hardware platforms
. Produces innovative solutions for a variety of complex problems
. Guides users in formulating requirements
. Identifies omissions and errors in requirements
. Arbitrator for conflicts between individuals
. Reviews the work of lower employees
. Reviews proposals, gathers facts, analyzes data, compares alternatives in terms of cost, time, resources and recommends a course of action
. Increases knowledge of current advances in writing abilities, software products, and documentation techniques
. Formulates decisions on broad policy and standards issues
. Demonstrates ability to make effective marketing presentations on many subject-matter areas
. Is a role model of the culture and provides leadership to others to understand and adapt to the culture
. Demonstrates in-depth knowledge and understanding of software development business (Marketing, Sales, Human Resources, Finance and Accounting)

Id. at 94.

Although Park City Group did not have a single job description for plaintiff's position, in response to interrogatories it produced a job description for a "Senior Technical Writer/Editor" that stated the following:

. Mastered the documentation tools and technical writing techniques
. Familiar with several operating systems and hardware platforms and demonstrates the ability to document within those systems
. Reviews programming code to determine program functionality
. Performs support functions to CSRs and customers
. Increases knowledge of current advances in training and documentation techniques and methods
. Highly productive in developing products and achieving customer delight
. Demonstrates ability to accurately define resource and time requirements for complex, multi-faceted projects and achieve successful project completion
. Capable of editing, writing, and reviewing work from a variety of subject matter areas
. Demonstrates an understanding of the basic economics of the software

10

> business and optimizes the spending of company funds
> . Is a role model of the culture and provides leadership to others to understand and adapt to the culture

Id. at 93. Plaintiff asserts that he did not perform the type of work in these job descriptions, and alternatively, he argues that even if he did perform those duties, they did not meet the "computer professional" exemption.

Plaintiff relies on his affidavit indicating that he expended the majority of his time on clerical tasks such as basic word processing, photocopying, collating and talking with other employees, and minimizing the amount of time he spent doing technical writing. Defendants correctly point out, however, that plaintiff's affidavit contradicts his deposition testimony in which he acknowledged performing many of the tasks set out in the job descriptions above, and thus the affidavit should not be considered. See Mack v. United States, 814 F.2d 120, 124-25 (2d Cir. 1987). In any event, the district court found that the clerical and "gopher" type tasks that plaintiff listed in his affidavit were not duties and responsibilities assigned to him even if he was actually performing those duties. In fact, plaintiff's counsel admitted during the hearing on the summary judgment motion that plaintiff was never directed to do many of those duties.

Plaintiff also asserts that, even if his primary duty was as a documenter/technical writer, his work did not require the highly specialized computer skills described in the regulations. Unfortunately, we cannot discern from the record whether plaintiff's primary duty required "theoretical and practical application of highly specialized knowledge in

11

computer systems analysis, programming, and software engineering," 29 C.F. R. § 541.303(c). The regulation defendants rely upon, 29 C.F.R. § 541.303(b)(2), refers to "[t]he . . . documentation . . . of computer systems or programs, . . . based on or related to user or system design specifications."

Our understanding of "documentation" in this context is that it would deal with the <u>internal</u> documentation process involved in programming and/or systems analysis, requiring knowledge of the system architecture, programming logic and language necessary to manipulate the internal operation of the computer itself. Our review of the record and further research into computer terminology indicates, however, that the term "documentation" is also used to refer to the writing of manuals for end-users, which would not necessarily involve the same type of highly developed computer skills.

In Park City Group's answers to plaintiff's first discovery it specified plaintiff's duties as follows:

> Plaintiff was essentially a documenter. As a consequence, he was responsible for documenting software application and the technical features that make up the application. This documentation process, among other things, involves writing, reviewing and editing the documentation; using computers to describe the application; running and authoring (customizing) the application; communicating with developers and other team members; participating in team and documenter meetings; participating in the design process including of screens that the user sees; testing the application to make sure that it performs properly (i.e., testing the user guides against the code to ensure the application performs as it is [sic] should and identifying bugs) and supporting the application internally and externally.

Appellant's App. 226.

12

Plaintiff's resume, which he prepared after his discharge, claims that while an employee at the Park City Group he "[d]esigned and developed new team--and corporate --marketing literature . . . [d]esigned and produced many new graphics . . . [l]ed documentation redesign efforts . . . [d]efined bug and enhancement tracking system . . . [e]dited, expanded, and improved the company's orientation and policies manual . . . [and] [w]rote and illustrated several large volumes of software documentation." Id. at 152. On their face plaintiff's duties and accomplishments appear to reflect high level skills, but without more we cannot determine whether they involve the depth of knowledge the law requires for the professional exemption.

We are persuaded after reading the entire record that the district court erred in finding that as a matter of law plaintiff's job as a technical writer/documenter met the requirements of the highly skilled computer professional. Defendants failed to provide the kind of detailed information about the primary duties and processes assigned to plaintiff, and the computer skill required in this area of "high tech" work to enable us to decide that it satisfies the exemption for a computer professional. This is an area in which the courts must rely on litigants to provide such evidence and to explain the common understanding of the technical terms used in the regulation.

We believe that under the regulations a computer professional could certainly include some kinds of documentation or technical writing work. Defendants provided evidence that documenters at Park City Group worked without close supervision and that

their work involves consistent exercise of discretion and judgment. But based on the record before us we cannot agree that defendants met their burden to show that no issues of material fact remained on this question. The district court may have relied too much upon plaintiff's relatively large salary in finding his work was professional. See Appellant's App. 328-30 (court specifically noted the large size of plaintiff's salary, and the "creative nature" of his work in finding that he was a professional.)

## IV

Finally, we do not believe defendants met their burden of showing that plaintiff satisfied the requirements for the artistic professional exemption. To meet this exemption, defendants must show that plaintiff's primary duty consisted of the performance of "work requiring invention, imagination, or talent in a recognized field of artistic endeavor." 29 C.F.R. § 541.3. Recognized fields of artistic endeavor include "music, writing, the theater, and the plastic and graphic arts." Id. § 541.302(b). "In the field of writing the distinction is . . . difficult to draw. Obviously the requirement is met by essayists or novelists or scenario writers who choose their own subjects . . . . The requirement would also by met, generally speaking, by persons holding the more responsible writing positions in advertising agencies." Id. § 541.302(c)(2).

Given these regulations we doubt plaintiff's duties as a technical writer/documenter could qualify for an artistic professional exemption. Cf. Reich v. Gateway Press, Inc., 13 F.3d 685, 700 (3d Cir. 1994) (holding that task of rewriting press releases, etc.

14

did not meet artistic professional exemption in part because it did not "require any special imagination or skill at making a complicated thing seem simple"); Dalheim, 918 F.2d 1220, 1229 (5th Cir. 1990) (television producers who "perform their work within a well-defined framework of management policies and editorial convention" not exempt artistic professionals).  We do not foreclose defendants, on remand, from showing that plaintiff's work required the level of artistic invention, imagination or talent to satisfy this exemption.  What we do hold is that on the record presented the district court erred in granting summary judgment for defendants.

REVERSED and REMANDED for further proceedings in accordance with this opinion.