FILED
United States Court of Appeals
Tenth Circuit

December 23, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

EDOUARD K. ZOUTOMOU,

   Plaintiff - Appellant,

v.

KENNECOTT UTAH COPPER,

   Defendant - Appellee.

No. 13-4064
(D.C. No. 2:10-CV-00719-TC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.


   Edouard K. Zoutomou appeals the district court's grant of summary judgment

to Kennecott Utah Copper ("Kennecott") on his claims of unlawful termination from

employment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

   [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.   BACKGROUND

Zoutomou, a native of the West African country of Guinea, began working for Rio Tinto, Kennecott's parent company, in 1989.[1]  In 2002, Kennecott hired Zoutomou as a senior metallurgical engineer.  Kennecott started Zoutomou at a smelter plant but eventually assigned him to work at the Hydromet, which treats streams from Kennecott's smelter.  Zoutomou did not have a supervisory role but did provide engineering advice to operators, maintenance workers, and their supervisors, on the Hydromet's operations.  His job required substantial collaboration with co-workers, including his supervisors and maintenance workers, because any issues or proposed operational changes typically demanded joint action and agreement.

Throughout Zoutomou's seventeen years with Rio Tinto and Kennecott, his engineering skills were well-regarded and his performance reviews reflected that. However, Zoutomou had difficulty communicating and collaborating effectively with other workers at the Hydromet.  Supervisors, operators, and maintenance crew complained about Zoutomou's manner of dealing with people, specifically, that he was rude, arrogant, and did not listen to their input.  On several occasions Zoutomou had to meet with supervisors to discuss his demeanor, but problems continued despite those meetings.

In August 2005, Zoutomou's increasing problems forced his supervisor, David George-Kennedy, to develop a performance improvement plan ("PIP") with him.

---

[1] At the time Kennecott fired Zoutomou, he was fifty-four years old.

This document describes Zoutomou's deficiencies as a "lack of ownership" and "more energy needed." Aplt. App. at 450. Under "lack of ownership," the PIP states that his interactions with co-workers were "not sufficient" for his role, and lists two other areas needed for improvement. *Id.* Under "more energy needed," the PIP lists three plans or programs in which Zoutomou needed to show progress. *Id.* Under the heading "implications," the PIP states that if Zoutomou's "targets are not satisfied within the agreed timeframe he will be removed from his current position." *Id.*

In November 2005, George-Kennedy met with Zoutomou to review his progress. George-Kennedy noted that although Zoutomou's performance in certain areas was satisfactory, his future with the company depended on the plant working effectively. A bonus review conducted a month later showed that Zoutomou was still underperforming in other areas previously identified in the PIP, including working collaboratively.

In May 2006, Zoutomou's difficulty working with others continued when he and a co-worker, Paula Olson, had a confrontation after Zoutomou refused to wear safety gear in an area of the plant that requires it. Olson told her supervisor that Zoutomou had yelled and pointed his finger at her. Zoutomou claimed that he only raised his voice to be heard above the noisy environment and that the hand gestures were simply a cultural tic. Nevertheless, Kennecott terminated Zoutomou's employment the following week for failing to meet the company's performance

expectations, including the items outlined in the PIP and the company's demand that he improve his ability to work effectively with co-workers.

Zoutomou appealed his termination to the company but in his appeal letter, did not mention anything about his age, race, color, or national origin. His appeal was denied. Following an unsuccessful appeal to the state Antidiscrimination and Labor Division, Zoutomou filed suit in federal court. He alleged that Kennecott unlawfully terminated his employment on account of his race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964. He also asserted claims of retaliation under 42 U.S.C. § 1981 and of age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"). Following discovery, Kennecott moved for summary judgment on all of Zoutomou's claims.

The district court granted Kennecott's motion on all of Zoutomou's claims. Starting with Title VII, the court concluded that Zoutomou had failed to establish a prima facie discrimination case. The court found that considerable evidence in the record showed he was not meeting performance expectations and that Zoutomou had provided no evidence of racial animus. Furthermore, the court reasoned that even had Zoutomou established a prima facie case of discrimination, Kennecott proffered a legitimate, non-discriminatory reason for discharging him that was supported by evidence in the record.

As to Zoutomou's ADEA discrimination claim, the court found he could not make out a prima facie case by again noting that the evidence demonstrated unsatisfactory job performance and that Kennecott provided a legitimate reason for its decision to discharge him. Although Zoutomou argued that George-Kennedy's instruction that "more energy [was] needed" was a veiled reference to his age, the court thought that the context of the comment suggested "more energy" was simply a request for mental, not physical, sharpness. In any event, the court concluded the comment was nothing more than an "ambiguous 'stray remark'" that does not create an inference of discrimination. *Zoutomou v. Kennecott Utah Copper*, No. 2:10-CV-00719, 2013 WL 1213386, at *7 (D. Utah Mar. 25, 2013). Moreover, the court found that Zoutomou failed to establish any nexus between the allegedly discriminatory statements and Kennecott's decision to terminate his employment.

Finally, the court rejected Zoutomou's retaliation claim as meritless because he had never complained about discrimination during his employment with Kennecott, and thus did not engage in any protected activity. *See Tabor v. Hilti*, *Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013) (noting that a plaintiff bringing a retaliation claim is first required to establish that he opposed a discriminatory practice before proving his employer took an adverse employment action because of such opposition). Zoutomou now appeals the court's grant of summary judgment on his Title VII and ADEA claims.

## II.    DISCUSSION

We review de novo the district court's grant of summary judgment. *Tademy v. Union Pac. Corp*., 614 F.3d 1132, 1138 (10th Cir. 2008).  A party is entitled to summary judgment if it demonstrates through pleadings, depositions, answers to interrogatories, admissions on file, or affidavits, that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists when, viewing the record and making reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-moving party.  *Bones v. Honeywell Int'l, Inc*., 366 F.3d 869, 875 (10th Cir. 2004).

When a plaintiff seeks to prove a Title VII violation by circumstantial evidence, as Zoutomou does here, the plaintiff must establish a prima facie case of discrimination by demonstrating that (1) he belongs to a protected class; (2) he was performing his job satisfactorily; and (3) the circumstances of his termination give rise to an inference of discrimination.  *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004).  If established, the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for the termination.  *Orr v. City Of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).  If the defendant does so, the burden shifts back to the plaintiff to provide evidence that the defendant's proffered reasons are pretext for discrimination.  *Id*.

There is no dispute that as a West African native, Zoutomou is a member of three protected classes under Title VII: race, color, and national origin.  With regard to whether he was performing his job satisfactorily, he argues that the district court improperly relied on evidence Kennecott manufactured after his firing to provide a post-hoc rationalization for his discharge.  But this argument fails for two reasons. First, the evidence that Zoutomou contends the district court improperly relied upon—namely, depositions and letters from company employees detailing the problems with Zoutomou's performance prepared after his discharge—are precisely the types of record material intended to be used to support a motion for summary judgment.  *See* Fed. R. Civ. P. 56(c).  Second, the PIP that Zoutomou dismisses as the only disciplinary document he received during his employment provides conclusive evidence that he was not meeting performance expectations several months before his termination.  The PIP demonstrates that his ability to work with others was in need of improvement—so much so that intervention was required.[2]  Zoutomou incorrectly claims the PIP was "resolved" in November 2005 during his PIP review when his performance was deemed "satisfactory."  Aplt. App. at 454.  To the contrary, George-Kennedy qualified that "satisfactory" statement with a note that Zoutomou's "long term career [with the company]" depended on his performance over the next

---

[2] Zoutomou vehemently argues that PIPs are not disciplinary tools and that Kennecott improperly used the PIP as one here to justify his discharge.  But whether the PIP was disciplinary—in theory or in practice—does not alter the fact that the PIP signaled that Zoutomou had performance deficiencies the company concluded he needed to resolve.

six months.  During a bonus review roughly a month later, George-Kennedy gave Zoutomou low scores for "collaborative behavior" and "developing people"—two problem areas identified in the PIP.  *Id.* at 465.  Zoutomou has therefore failed to provide evidence that he was adequately performing his job.

Moreover, Zoutomou identifies no evidence giving rise to an inference of discrimination.  He argues that to the extent he failed to "get along" with co-workers, it was only so because they discriminated against him.  Aplt. Br. at 11.  In other words, Zoutomou blames his inability to work collegially with co-workers as evidence of their racial animus.  But as he provides no support for this conclusory allegation, he cannot create a genuine issue of fact supporting a charge of discrimination.  He additionally argues that in 2002, three similarly-situated white co-workers in his department were given priority in location transfers despite his own efforts to be relocated, which he believes serves as evidence of racial animus.  But apart from being based on mere speculation, this argument must fail because even if true, Zoutomou does not establish any nexus between those alleged actions in 2002 and his termination in 2006.  *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1117-18 (10th Cir. 2007) (finding no pretext where plaintiff offered no evidence creating a nexus between alleged prior mistreatment of a protected class and the alleged negative employment action).  Further, Zoutomou has not cited any record evidence showing that Kennecott's legitimate, non-discriminatory reason for termination was in fact pretextual.

As to the ADEA claim, Zoutomou was required to prove that he (1) was forty years of age or older; (2) performed satisfactory work; (3) was terminated; and (4) was replaced by someone younger. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008). For the reasons noted above, Zoutomou has not provided evidence that he performed satisfactory work. Neither has he satisfied his burden of showing that Kennecott's reasons for termination were pretextual or were otherwise motivated by his age. Zoutomou points to the statement in his PIP that his supervisor needed "more energy" from him to demonstrate that Kennecott discharged him because of his age. Aplt. App. at 450. Aside from the fact that the PIP's explanation suggests it was simply a reference to Zoutomou's need to make progress on his projects—and Zoutomou's own admission that he was uncertain about the meaning of "more energy"—there is nothing about the statement to indicate a connection to his age. As the district court noted, such abstract remarks do not create an inference of age discrimination. *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000) (stating that age-related comments about plaintiff can support inference of age discrimination but isolated, ambiguous comments may be too abstract).

Finally, Zoutomou alleges that the district court improperly ignored his contention that the evidence on which Kennecott—and subsequently, the court— relied was altered after his termination to make it seem as though he were underperforming during his employment. However, Zoutomou produced no evidence

- 9 -

supporting his allegations of documentary fabrication and we find none in the record. Zoutomou has simply failed to present any meaningful evidence that Kennecott wrongfully terminated him on the basis of discrimination.

Accordingly, the judgment of the district court is affirmed.

Entered for the Court


Gregory A. Phillips
Circuit Judge