FILED
United States Court of Appeals
Tenth Circuit

January 6, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CLAIRE BRAINERD,

      Plaintiff - Appellant,

v.

SCHLUMBERGER TECHNOLOGY
CORPORATION,

      Defendant - Appellee.

No. 14-1153
(D.C. No. 1:12-CV-01255-WYD-KMT)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **GORSUCH**, and **PHILLIPS**, Circuit Judges.


    Claire Brainerd is a trailblazer: in May 2011, Schlumberger Technology Corporation (Schlumberger) hired her to work as a mechanic in its push-pull department, making her the first woman to work in that shop. But Schlumberger ultimately considered Brainerd a sub-par employee, one who had a poor attitude and committed serious safety violations. After four months, the company had enough. Brainerd's supervisors decided that she could not improve her below average performance, so Schlumberger fired her. Brainerd thought her dismissal was because she was a woman—the only woman in that shop.

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Brainerd then sued Schlumberger under Title VII. The district court granted summary judgment for Schlumberger, concluding that Brainerd did not establish her prima facie case because she failed to show that she was performing her work satisfactorily.

We agree with the district court's decision to grant summary judgment for Schlumberger, but we disagree with its rationale. The district court erred in concluding that Brainerd failed to show that her work was satisfactory; in doing so, the court "put the cart before the horse" by skipping over the first prong of the applicable burden-shifting test and denying Brainerd the opportunity to argue that Schlumberger's proffered reason was pretextual. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1151–52 (10th Cir. 2005). Nevertheless, even if the district court had given Brainerd that opportunity to argue pretext, we conclude that she would have been unable to raise a genuine dispute of material fact that Schlumberger's reason for firing her—her poor performance—was pretextual. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

BACKGROUND

Schlumberger, a large oil field service company, operates a drilling and measurements facility in Commerce City, Colorado. Paul Dickson was the manager in charge of that facility when Schlumberger hired Brainerd, and Dickson served there until Schlumberger promoted him. Kevin Ramsay replaced Dickson, and Ramsay was the manager at Brainerd's termination. There are a number of departments at the Colorado facility, including the push-pull department. Andrew Emerson was the supervisor of the push-pull department. Schlumberger divided the push-pull department into three cells, including the

- 2 -

power-drive cell. Bryan Peterson was the "cell-lead" of the power-drive cell (where Brainerd was assigned after starting). Chris Reno worked as a technician and served as Brainerd's mentor. There were three areas in the power-drive cell: disassembly (further divided into tear-down and disassembly), subassembly (further divided into clamp plate assembly and bearing house assembly), and build-up.

In May 2011, Schlumberger hired Brainerd as a Mechanic Technician Trainee. Brainerd was the first female mechanic technician that Schlumberger had ever hired. As part of its training program, Schlumberger rotated Brainerd and other trainees through the three areas. The company expected Brainerd to complete each area in four weeks. Brainerd's first rotation was in the disassembly area. She thought that all was going well; her mentor, Chris Reno, reviewed her progress and thought that Brainerd "had the ability" to progress in the push/pull department. J.A. vol. II at 243. Supervisors tracked a trainee's performance through completion of on-the-job log sheets (OTJ). J.A. vol. II at 233, 242. Brainerd saw nothing in her OTJs suggesting that she performed below standards or failed to meet expectations.

It did not take long for Schlumberger to adopt a contrary view about Brainerd's performance. Emerson reviewed Brainerd's work and progress and decided that, "in order to facilitate better learning" for Brainerd, she should remain in disassembly for an additional rotation instead of moving on to another area. J.A. vol. I at 13. Brainerd believed she remained in disassembly to help Schlumberger satisfy production needs.

According to Schlumberger, Brainerd had other issues as well. Sometime during Brainerd's first two weeks on the job, Brainerd decided to lie down on the floor to pop her back. Brainerd says she did this at 11:30 p.m. when no one else was nearby. However, she admits that Emerson spoke to her about the incident and told her not to do it again. J.A. vol. II at 208–09. Emerson and Dickson addressed other performance issues and concerns with Brainerd at a July 2011 meeting, including: (1) her negative and "general[ly] immature" attitude and lack of professionalism; (2) her unwillingness to take direction and perform certain job assignments; (3) her frequent times sitting down on the job; and (4) the back-popping incident which, in Schlumberger's view, was a serious safety concern because Brainerd did this in a busy warehouse area where forklifts routinely operated and carried heavy tools. J.A. vol. I at 14–15, 125–27. Schlumberger considered this meeting a "formal disciplinary discussion." J.A. vol. I at 14. On the other hand, Brainerd thought the July meeting went well, particularly because Dickson told her she was progressing as expected.

Brainerd eventually moved out of disassembly into subassembly. Brainerd thought that Peterson had decided that she was qualified to move to subassembly. Schlumberger attributes the move to Emerson's desire to see if Brainerd could further her development. After Brainerd completed a four week rotation in subassembly, she returned to disassembly for, as Schlumberger put it, further remedial training. Brainerd believed the move was again related to production needs; she had no inkling of any deficiencies in her performance. Schlumberger made the move because Brainerd lacked "core competencies

. . . that should have been concretely established in her first rotation in disassembly." J.A. vol. I at 15.

Schlumberger says that, upon Brainerd's return to disassembly, her performance issues continued. Ramsay and Emerson, the managers, learned of two problems: (1) Brainerd's failure to clock-out and leave work when instructed, and (2) an argument she had with a co-worker about Brainerd's failure to clean her work area. J.A. vol. I at 18. Ramsay and Emerson also personally witnessed two instances where Brainerd violated company rules. First, Brainerd incorrectly and unsafely removed parts from a bias unit when she allowed a clamp plate (that weighed more than twenty-five pounds) to drop uncontrolled onto an unsecured cart.[1] J.A. vol. I at 16. The managers considered this dangerous and contrary to Schlumberger's protocol and training because the plate could bounce off the cart and either break and/or injure someone nearby. Second, Brainerd failed to strap a bias unit to the work bench, which Ramsay and Emerson considered another serious safety risk. Brainerd does not dispute that the two instances happened; rather, she contends that she completed the two tasks as Schlumberger had trained her.

Ramsay and Emerson had had enough; they decided to fire Brainerd. After a meeting between Emerson and Ramsay, Emerson documented Brainerd's training and performance issues in an e-mail he sent to Ramsay. In September 2011, less than four months after Brainerd started at Schlumberger, Ramsay fired her. He told her that she was

---

[1] A bias unit is attached to a rotary drill and applies force to the drill bit in a controlled direction while the entire drill rotates. A clamp plate is a plate that is used to mount various fixtures.

terminated because her performance, safety record, and attitude dropped to an unacceptable level. Brainerd was surprised, later deciding that Ramsay had no good reason to terminate her. She asserted that an HR representative had told her that she was terminated for failing to sign time sheets, which she says was untrue. Brainerd says that Ramsay only told her that her firing could be due to her attitude.

Brainerd paints a different picture of her employment at Schlumberger than her supervisors do. She was the first and only female (of 70–80 males) in that particular department, and Schlumberger has not hired another female for that department since her termination. Peterson, her cell lead, could not recall Schlumberger terminating another trainee after only four months.

Brainerd believed a number of the men were complaining about her presence. One supervisor told her that Schlumberger did not know where to place a woman in her position. Another employee told Brainerd that some of Brainerd's co-workers did not like having her in the shop, and they were out to get her "because she was a girl." J.A. vol. II at 232. Brainerd considered the department's atmosphere to be masculine. One tradition Brainerd points us to is "man-love Thursday," where the "guys working around [Brainerd] would touch each other in a homosexual manner as part of a jest." J.A. vol. II at 231. Brainerd alleged that there was "butt-slapping, shoulder rubs, lewd gestures, off-color and sexual language, crude music, and jokes about hitting women and animals." J.A. vol. II at 231. She also suggests she was discriminated against because she was a

female—for example, the male co-workers would not invite her to lunch and would not let her carry heavy things.

In May 2012, Brainerd sued Schlumberger in federal district court, alleging that Schlumberger had discriminated against her because she is female, in violation of 42 U.S.C. § 2000e-2. Schlumberger moved for summary judgment. It argued that Brainerd failed to satisfy her burden under *McDonnell Douglas Corp. v. Green* to establish a prima facie case of sex discrimination because she could not establish the second prong of the prima facie case—that she was completing her job satisfactorily. *See* 411 U.S. 792, 802 (1973); *see also Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). Brainerd responded that she indeed satisfactorily performed her job, but that her co-workers had complained about her to Ramsay because they did not like that she was female, and those complaints had infected Ramsay's termination decision with a discriminatory animus. She also argued that Schlumberger's proffered reasons for terminating her were mere pretext.

The district court granted Schlumberger's motion for summary judgment. It reviewed the evidence Brainerd put forth to prove her prima facie case before it devoted considerable time to Schlumberger's evidence. The district court analyzed Brainerd's claim under the *McDonnell Douglas* burden-shifting framework, noting that Brainerd had the burden to prove, among other things, that she was performing her job satisfactorily. Although the district court considered Brainerd's assertions that her supervisors had all told her she was performing satisfactorily, the court found scant—if any—evidence to

support her assertions. Because the district court concluded that Brainerd could not establish a prima facie case of discrimination, it ended its analysis without considering the other two prongs of *McDonnell Douglas*—whether Schlumberger produced a legitimate, nondiscriminatory reason for termination and whether Brainerd could show that those reasons were pretextual. *See Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1220 (10th Cir. 2007). Brainerd timely appealed.

## DISCUSSION

### A. Standard of Review and Applicable Law

We review de novo the district court's grant of summary judgment, applying the same standard the district court used. *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1131 (10th Cir. 2014). We must view the factual record and make reasonable inferences from it in the light most favorable to the party opposing summary judgment. *Bohn v. Park City Grp., Inc.*, 94 F.3d 1457, 1460 (10th Cir. 1996). We will uphold the district court's grant of summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute or issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim. *Id.*

An employer may not discharge any individual because of that person's sex. 42 U.S.C. § 2000e-2(a)(1). A plaintiff can show that her employer discriminated against her by providing either direct or circumstantial evidence of discrimination. *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002). As the district court correctly noted, Brainerd presents circumstantial evidence to support her claim.

We evaluate claims based on circumstantial evidence under *McDonnell Douglas*'s burden-shifting framework. *McDonnell Douglas Corp.*, 411 U.S. at 802–05. First, Brainerd must prove a prima facie case of discrimination. *Id.* at 802. If Brainerd makes this showing, the burden shifts to Schlumberger "to articulate some legitimate, nondiscriminatory reason" for its employment decision. *Id.* If Schlumberger articulates such a reason, then the burden shifts back to Brainerd to show that the employer's proffered reason for terminating her was mere pretext. *Id.* at 804–05.

## B. Prima Facie Case

We start with whether Brainerd established a prima facie case. To do so, she had to establish that: (1) she is a member of a protected class; (2) she was qualified and satisfactorily performing her job; and (3) she was terminated under circumstances giving rise to an inference of discrimination. *See Barlow*, 703 F.3d at 505 (citing *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004)). Brainerd satisfies the first prong because, as a female, Brainerd is a member of a protected class. *See E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 800 n.6 (10th Cir. 2007).

As for satisfactory performance, Brainerd argues that the district court erred in its application of *McDonnell Douglas* by impermissibly increasing her burden to prove a prima facie case. She contends that she did not have to disprove Schlumberger's proffer that the company terminated her for performance reasons. Rather, Brainerd asserts that she only needed to provide "credible evidence" to the district court that she was performing her job satisfactorily. Appellant's Br. at 21–22.

We agree with Brainerd. To be sure, Schlumberger presented compelling evidence of Brainerd's subpar performance. But at the summary judgment stage, the district court must look at the facts in the light most favorable to Brainerd, the non-moving party. *See Bohn*, 94 F.3d at 1460. The district court did not do that. Instead of examining Brainerd's evidence, it mistakenly focused on Schlumberger's evidence supporting its reason for terminating Brainerd. This was an incorrect application of the first prong of *McDonnell Douglas*'s burden-shifting framework. Schlumberger's reasoning for terminating Brainerd is "irrelevant at this point of the *McDonnell Douglas* inquiry." *Orr*, 417 F.3d at 1152.

We also note that Brainerd's burden to establish a prima facie case under *McDonnell Douglas* is not a heavy one. Indeed, we have said that a plaintiff can demonstrate her satisfactory performance simply by insisting that she was performing satisfactorily. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1166 n.3 (10th Cir. 1998). This much Brainerd does. She asserts that her work was satisfactory and that no one at Schlumberger told her otherwise until the company fired her. Ultimately, the district court's analysis of

the prima facie case "put the cart before the horse" by making "the playing field unlevel for [Brainerd] when [her] burden was supposed to be 'not onerous.'" *Orr*, 417 F.3d at 1151–52 (citing *Ortiz v. Norton*, 254 F.3d 889, 894 (10th Cir. 2001)).

Schlumberger urges us to affirm on the same basis that the district court did. The company argues that we can do so because Brainerd did not adequately cite to admissible evidence to support her prima facie case. We disagree. To be sure, a plaintiff in an employment discrimination case needs to reference specific facts in her motion materials. *Adler*, 144 F.3d at 672. But Brainerd did that in her summary judgment motion. She alleged various facts and cited to her attestation or to deposition testimony in support. We are more concerned about those instances when we have to search through the record and make a party's case for it. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992). This is not such a case.

Schlumberger also suggests that we affirm on the same basis because Brainerd failed to provide evidence that she was performing her job adequately. The company points us to an unpublished opinion in which we affirmed summary judgment for the employer when that employer provided evidence of poor work performance and the employee "failed to provide evidence that he was adequately performing his job." *Zoutomou v. Copper*, 550 F. App'x 647, 650 (10th Cir. 2013) (unpublished). Again, we note that Schlumberger presented evidence of Brainerd's poor performance. But Brainerd did not fail to provide evidence of satisfactory performance. She asserted that she never received any indication of unsatisfactory performance. Brainerd also points us to her mentor's

belief that Brainerd "had the ability to" progress in the department. J.A. vol. II at 243. Brainerd's assertions here are sufficient for the prima facie stage. Given the light burden Brainerd has to meet for her prima facie case, we decline Schlumberger's invitation to affirm on this basis.

As for the final part of the prima facie case, Brainerd must show that she was terminated under circumstances giving rise to an inference of discrimination. *See Barlow*, 703 F.3d at 505. An inference requires circumstances that "must be such that it can be inferred that more likely than not the actions were based on . . . discriminatory criteria." *Bauer v. Bailar*, 647 F.2d 1037, 1044 (10th Cir. 1981) (citation and internal quotations omitted). A variety of circumstances can give rise to an inference of discrimination, including the decisionmakers' actions or remarks that could be viewed as reflecting a discriminatory animus, the timing or sequence of events leading to a plaintiff's termination, or a plaintiff who is the lone member of a protected class in her workplace. *See, e.g.*, *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005). Here, just as in *Plotke*, Brainerd was the only female hired to work in the shop. *Cf. id.* at 1107 (stating that the plaintiff's being the first and only woman employed at the business was relevant). In addition, Schlumberger has not hired another woman since Brainerd's departure. To be sure, this supports an inference of discrimination. But in any case, we need not resolve this question. Even if we assume that Brainerd made out her prima facie case, we conclude that Schlumberger is entitled to summary judgment because Brainerd cannot demonstrate pretext. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323–24 (10th Cir. 1997)

(concluding that plaintiff could not raise a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual).

**C. Pretext**

Before we discuss pretext, we pause to note that we may affirm on any basis that the record supports, even if it requires us to rule on arguments the district court did not reach. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). Both parties briefed and argued the question of pretext, and we affirm on that basis.

Because Brainerd has established a prima facie case of discrimination, the burden shifts to Schlumberger "to articulate some legitimate, nondiscriminatory reason" for terminating Brainerd. *McDonnell Douglas Corp.*, 411 U.S. at 802. Schlumberger says it fired Brainerd because her performance and development fell below an acceptable standard. Poor performance is "the quintessential legitimate, nondiscriminatory reason for termination." *Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012).

With that, we move to the final step in the *McDonnell Douglas* burden-shifting framework. Brainerd has the ultimate burden to show that Schlumberger's proffered reason for terminating her was mere pretext for discrimination. *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1307 (10th Cir. 2005). A plaintiff demonstrates pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (quoting

*Morgan*, 108 F.3d at 1323). Evidence of pretext may include: (1) prior treatment of the plaintiff; (2) the employer's policy and practice regarding employment of protected classes; (3) disturbing procedural irregularities; and (4) the use of subjective criteria. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002).

Simply put, even if we consider the evidence in Brainerd's favor, Brainerd has not produced evidence of "such weaknesses" or "inconsistencies" in Schlumberger's proffered reason. *Jaramillo*, 427 F.3d at 1308; *see also Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1179–80 (10th Cir. 2006) (concluding that the plaintiff did not produce sufficient evidence to create a genuine issue of material fact when the employer terminated her for her poor performance). Brainerd does not dispute that she lay down on the floor to pop her back. While Brainerd considered it a "non-issue," J.A. vol. II at 209, Schlumberger did not—the company considered it a serious safety concern. Moreover, Brainerd's failing to deem it a serious concern supports Schlumberger's decision to terminate her for her failure to "[take] the job seriously." J.A. vol. I at 54. Brainerd also agrees that the clamp plate dropped into an unsecured cart. The parties dispute how far the clamp plate fell: Brainerd says two inches; Schlumberger says two feet. But the distance is immaterial; Schlumberger considered the failure to secure the cart to be the safety violation, not the distance that it fell. Finally, Brainerd does not dispute that she failed to use a strap to hold down a bias unit to the bench. Brainerd argues that she did as she was trained. But she acknowledges that Emerson explained to her the proper safety protocol, after which Brainerd still made a critical mistake—failing to use a strap—no

more than five minutes later. At this stage, Brainerd must raise a genuine dispute of material fact as to whether Schlumberger's reason for termination is pretextual. *See Morgan*, 108 F.3d at 1323. This Brainerd fails to do.

Alternatively, Brainerd tries to elude summary judgment by arguing that she successfully raised a "cat's paw" claim. *E.E.O.C. v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 484 (10th Cir. 2006). She contends that the co-workers who complained about her "played Mr. Ramsay [the decisionmaker] like a pawn" to get her fired. Appellant's Br. at 30. She says she proffered sufficient facts to show that her co-workers' discriminatory motives caused her termination. *See generally Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (stating that an employer will be liable if a subordinate's actions are motivated by discriminatory animus and the subordinate's act is a proximate cause of the eventual adverse employment action). Brainerd points us to *Staub v. Proctor Hospital*, 562 U.S. 411, 131 S. Ct. 1186, 1189–94 (2011), where the ultimate decisionmaker relied blindly on a subordinate supervisor's reprimand—a reprimand that the supervisor created for discriminatory reasons. But such facts do not exist in Brainerd's case. Brainerd also contends that a jury must determine whether Schlumberger's reason for terminating her was valid or pretextual because she raised a genuine issue of material fact. She argues that she produced evidence that the decisionmaker had a clear bias against women, just as the plaintiff did in *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013). Simply put, Brainerd contends that Emerson wanted her gone solely because she was a woman.

Contrary to Brainerd's assertions, her termination is not similar to those in *Staub* or *Tabor*. Brainerd has produced no evidence linking her co-workers' statements to Emerson, Dickson, or Ramsay—the ultimate decisionmakers. Brainerd also has no evidence, except that she was the only woman working in the department, that the decisionmakers had any sort of discriminatory bias or animus that motivated their decision to fire her. Rather, the three supervisors—including Ramsay—saw Brainerd commit two serious safety violations. Ramsay did not rely blindly on what his subordinates told him—he witnessed the proof himself. Ultimately, Brainerd has not raised a genuine dispute of material fact about whether Schlumberger's reason for terminating her was pretextual. *See Morgan*, 108 F.3d at 1323. Accordingly, she cannot survive summary judgment.

CONCLUSION

The district court erred when it concluded that Brainerd failed to establish a prima facie case of discrimination. In doing so, the court failed to view the evidence in the light most favorable to Brainerd and considered Schlumberger's evidence for terminating her, an inquiry that should not take place in the first prong of *McDonnell Douglas*. Nevertheless, because Brainerd failed to raise a genuine dispute of material

fact as to whether Schlumberger's articulated reason was pretextual, we affirm the district court's grant of summary judgment for Schlumberger.

ENTERED FOR THE COURT

Gregory A. Phillips
Circuit Judge